**UNITED STATES of America**

v.

**Julio RAMOS, Calixto Gomez and Oswaldo Hernandez, Defendants.**

**No. 67 Cr. 296.**

United States District Court
S. D. New York.

March 29, 1968.

See also, D.C., 42 F.R.D. 347.

Robert M. Morgenthau, U. S. Atty., for Southern District of New York, by Paul K. Rooney, Asst. U. S. Atty., for the Government.

Edwin Torres, New York City, for defendant Ramos.

Abraham Solomon, New York City, for defendant Gomez.

## MEMORANDUM

BONSAL, District Judge.

Defendants Julio Ramos and Calixto Gomez waived a jury and were tried before the court on March 20–21, 1968 on four counts of a five-count indictment charging violations of the Federal narcotics laws. Count 1 charges the defendants with a conspiracy to violate 21 U.S. C. § 176a. Counts 2 and 4 charge the defendant Ramos and count 5 charges the defendant Gomez with substantive violations of that Section.* On March 22,

---

* A third defendant, Oswaldo Hernandez, is named in counts 1 and 2 and is named alone in count 3 which charges a substantive violation of 21 U.S.C. §§ 173, 174. A bench warrant for the arrest of Hernandez, issued on October 17, 1967, was unsatisfied as of the trial and a severance as to Hernandez was granted.

1968 the court found the defendant Ramos guilty on counts 1, 2 and 4, and found the defendant Gomez not guilty on counts 1 and 5. The court herein sets forth its reasons for finding the defendant Gomez not guilty.

The evidence adduced at trial showed that on March 20–21, 1967 Agents of the Federal Bureau of Narcotics had the defendant Ramos and the premises at 130 West 74th Street, New York, New York under surveillance. On March 20 the Agents observed Ramos meet an individual known to one of them as Panama, receive some money from Panama, count it and then drive to 130 West 74th Street and go into the basement apartment. Ramos came out of the apartment with a brown paper bag, drove to 202 West 82nd Street and went into the building with a package. Ramos then returned to the basement apartment at 130 West 74th Street, came out of the apartment and went to Room 910 at 378 West End Avenue where Hernandez's name was on the door. At 11 P.M. that evening the Agents observed Ramos return to the basement apartment.

On March 21 at about 5:30 P.M. the Agents observed Ramos come out of the basement apartment, go to 202 West 82nd Street, return to the basement apartment and then leave. At about 9 P.M. they observed Ramos and Hernandez meet and have a conversation which concerned marihuana and which one of the Agents overheard. The Agents then observed Ramos go to the basement apartment, come out carrying a brown paper bag and go to Room 910 at 378 West End Avenue. Outside of the Room the Agents smelled marihuana, observed Ramos come out of the Room, go to his car and return to the Room carrying a brown paper bag which the Agents later seized together with 2,011 grams of marihuana found in the bag.

On March 22, 1967 a search warrant was obtained for "the premises known as 130 W. 74th St., Basement apt, New York, N. Y." At 3 P.M. that day the Agents went to the apartment and the defendant Gomez opened the door. The Agents searched the apartment and found approximately 89,900 grams of marihuana in two trunks and three suitcases which were in the bathtub behind the shower curtain in the bathroom of the basement apartment. The trunks, suitcases and marihuana were seized. Prior to trial, the defendant Gomez moved to suppress the trunks, suitcases and marihuana on the ground that the search warrant failed to describe with sufficient particularity the premises to be searched. In a memorandum filed June 21, 1967 Judge Mansfield denied the motion without a hearing on the ground that even if there was more than one basement apartment at 130 West 74th Street as alleged by the defendant Gomez, the warrant was sufficiently specific since the Agents who obtained the warrant "could identify the particular apartment to be searched." (42 F.R.D. 347).

Agent Thomas testified at trial that 130 West 74th Street was a brownstone house and that under the outside stairs to the upper floors, there was a door leading into the basement. On March 21, 1967 he entered the basement through this door and he testified that there appeared to be four or five rooms in the basement constituting a single apartment. He said there was a sliding door on the left as he entered the basement and that the only other door in the basement hallway appeared to be a door for a closet.

■ From this testimony it is clear that even if there was more than one basement apartment, the Agents executing the warrant would correctly identify the apartment to be searched as the one that the Agents had under surveillance on March 20–21, 1967. See United States v. Pisano, 191 F.Supp. 861 (S.D. N.Y.1961). Moreover, it would have been impossible to discover that there was more than one basement apartment until after the rooms in the basement had been searched. See United States v. Santore, 290 F.2d 51, 66–67 (2d Cir.

1960), cert. denied, 365 U.S. 834, 81 S.Ct. 745, 5 L.Ed.2d 743 (1961). Therefore, in accordance with Judge Mansfield's decision, the trunks, suitcases and marihuana were received in evidence at the trial.

■■ The only evidence with respect to the defendant Gomez was that he opened the door of the basement apartment when the Agents executed the search warrant. Since there was no testimony that the apartment was under surveillance on March 22, 1967 prior to the search, the evidence did not indicate how long Gomez had been in the apartment prior to the time when the warrant was executed. On the previous two days when the apartment had been under surveillance, Gomez had not been observed going in or out, so there was no evidence that Gomez had been in the apartment prior to March 22, 1967. There was no evidence as to who rented or owned the apartment or as to whether there were clothes or other items in the apartment and, if so, whether any of these items belonged to Gomez or to someone else. From the evidence that Ramos was observed entering and leaving the apartment on several occasions, it appears more likely that the apartment was owned or rented by Ramos than by Gomez. Finally, there was no evidence that when the Agents entered the apartment, they smelled marihuana, although they did testify that they smelled marihuana while they were outside Hernandez's room the previous day.

There was evidence that Ramos and Gomez were friends and it may be that Gomez knew Ramos was selling marihuana. It is also probable, as the government contends, that Gomez was guarding the marihuana in the apartment. However, the evidence that Gomez was in the apartment at the time the marihuana was found and that he and Ramos were friends, is not sufficient to prove beyond a reasonable doubt that Gomez had either actual or constructive possession of the marihuana found in the basement apartment. See Delgado v. United States, 327 F.2d 641 (9th Cir. 1964); United States v. Contrades, 196 F.Supp. 803, 807 (D.Hawaii 1961); People v. Antista, 129 Cal.App.2d 47, 276 P.2d 177 (Dist.Ct. of Appeal 1954); cf. Gonzales v. United States, 301 F.2d 31 (9th Cir. 1962); Guevara v. United States, 242 F.2d 745 (5th Cir. 1957); compare United States v. Berry, 362 F.2d 756 (2d Cir. 1966); Travis v. United States, 362 F.2d 477 (9th Cir.), cert. denied, 385 U.S. 885, 87 S.Ct. 179, 17 L.Ed.2d 113 (1966); Ortiz v. United States, 329 F.2d 381 (5th Cir.), cert. denied, 379 U.S. 849, 85 S.Ct. 92, 13 L.Ed.2d 53 (1964); Thomas v. United States, 314 F.2d 936 (5th Cir.), cert. denied, 375 U.S. 849, 84 S.Ct. 105, 11 L.Ed.2d 76 (1963); Sykes v. United States, 312 F.2d 232 (8th Cir.), cert. denied, 373 U.S. 942, 83 S.Ct. 1551 (1963); Covarrubias v. United States, 272 F.2d 352 (9th Cir. 1959); Evans v. United States, 257 F.2d 121 (9th Cir.), cert. denied, 358 U.S. 866, 79 S.Ct. 98, 3 L.Ed.2d 99 (1958); Braswell v. United States, 200 F.2d 597 (5th Cir. 1952).

■■ Since the Government failed to prove beyond a reasonable doubt that the defendant Gomez had actual or constructive possession of the marihuana, the court cannot infer that Gomez knew the marihuana was illegally imported. With respect to count 1, the evidence did not establish beyond a reasonable doubt that Gomez knowingly and wilfully participated with Ramos in a conspiracy to sell marihuana.

For the foregoing reasons, the court found the defendant Gomez not guilty on counts 1 and 5.