**UNITED STATES of America,
Plaintiff,**

v.

**Lemar ESTERS, Gladys Harris,
Defendants.**

**Crim. No. 45352.**

United States District Court,
E. D. Michigan, S. D.

Jan. 12, 1972.

Bernard S. Kahn, Detroit, Mich., for defendants.

Ralph B. Guy, Jr., U. S. Atty., and Terrance K. Jolly, Asst. U. S. Atty., for plaintiff.

### OPINION AND ORDER
### ON MOTION FOR REHEARING

KENNEDY, District Judge.

Defendants Lemar Esters and Gladys Harris are charged with violating certain provisions of the Federal narcotic drug laws; namely, Title 26, United States Code, Section 4704(a). On April 19, 1971, the Court ordered that certain evidence seized from the premises in which the defendants were arrested be suppressed. The Court found that the search warrant purportedly authorizing the seizure of this evidence failed to describe the place to be searched with the degree of particularity required by the Fourth Amendment to the United States Constitution and was thus invalid. The Government has moved the Court to reconsider that ruling on the grounds that the Court was in error as a matter of law and also, in the alternative, contends that even if the search warrant was faulty, the search should nevertheless be upheld as falling within the "plain view" exception to the general rule invalidating warrantless searches and seizures.

The reasonableness of a search must depend, in large part, upon the circumstances surrounding it. From affidavits and exhibits submitted to the Court, as well as from testimony given in open court by witnesses for both the Government and defendants, the Court finds the following with regard to this search.

Agents of the Federal Bureau of Narcotics and Dangerous Drugs obtained a search warrant authorizing them to search the premises at 4637 Newport in the city of Detroit, Michigan. The object of the search was narcotic drugs, including heroin. The affidavit in support of the request for the search warrant recited that by means of judicially authorized wire interceptions the affiant, agent Richard McCoy, had acquired reason to believe that a certain individual who allegedly regularly dealt in the purchase and sale of narcotics, one McKinley Dalton, had picked up a quantity of such drugs from the Newport address. This information was gained from two telephone calls from Dalton placed to a telephone listed to the Newport address very early in the morning of October 20, 1970. One call was made at 12:22 a.m. and a second call was intercepted at 4:06 a.m. During both calls Dalton said that he would be "right over" to the Newport address. At approximately 6:30 p.m. on October 20, 1970, Dalton was observed to enter the premises at 4637 Newport, and then to return to his car and place a package in the car trunk.

On the basis of this information contained in the agent's affidavit, a warrant was issued authorizing the search of the structure located at 4637 Newport for narcotics. The premises to be searched were described simply as "the structure located on the west side of the street, of two-story construction, the bottom half of which is brick construction, the top half of which is of brown shingle construction, and bearing the numerals 4637 on the front thereof." No arrest warrants were obtained. At about 1:00 a.m. on October 21, 1970, the search warrant was executed; both defendants were apprehended with a quantity of suspected narcotics in their possession.

### *The Sufficiency of the Search Warrant*

■ No indication appears on the face of the search warrant or in the affidavit in support thereof as to whether

the building at 4637 Newport was a single or multiple-family dwelling. The inference to be drawn, confirmed by agent McCoy's own testimony, is that it was assumed to be a single-family residence. It is now undisputed, however, that it is and was a two-family dwelling, commonly known as a "flat" or "income bungalow." The issue therefore arises as to whether the warrant, which failed to describe either or both of the upper or lower living units as the area to be searched, met with the requirement of the Fourth Amendment that "no Warrants shall issue [without] . . . particularly describing the place to be searched."

Agent McCoy, who signed the affidavit accompanying the request for the search warrant and who also executed the warrant, has indicated to the Court, both in written affidavit and oral testimony, that at no time before executing the warrant, and even after entering the premises, did he know that it was a two-family dwelling. While there is no suggestion that the agent acted in bad faith, the Court is nevertheless of the opinion that a person who made a reasonable observation of the premises should have known that the structure at 4637 Newport was a two-family dwelling no later than the time at which he actually entered the building.

Photographs of the structure admitted as exhibits clearly reveal two mail-boxes, side by side, built into the brick immediately adjacent to the single front door. One of these boxes includes the opening for a "speaking tube," a device commonly used in multiple-occupancy dwellings to enable residents living in upper units to communicate with callers. In addition, there are separate and easily visible doorbell buttons attached to each mailbox. The boxes are located about six inches to the right of the door as one faces the house and are about one foot below the single house number. The view of the boxes from the sidewalk is unobstructed by any pillars, posts or other porch structure.

There are also two electric utility meters attached to the side of the building at the rear. There is an alley which runs next to and parallel with the side of the building and both meters appear from the photographs to be clearly visible from that alley.

Agent McCoy testified that other agents of the Federal Bureau of Narcotics and Dangerous Drugs knew at 4:06 a.m. on October 20, 1970 that a pick-up of narcotics was to be made from 4637 Newport sometime that day. He further testified that the Bureau had contacted the telephone company soon after their business offices opened on the morning of October 20, 1970 and ascertained the name of the owner of the telephone to whom the calls had been made. An official of the telephone company testified at the hearing that there were two telephone numbers in service at 4637 Newport on October 20, 1970, each listed to different individuals. He stated further that the individual records were marked "F-1" and "F-2," indicating that one telephone was located on the first floor and the other on the second floor. The telephone to which the intercepted calls were made was on the first floor. None of this information, which is readily available to law-enforcement agencies, was sought by the Federal agents before the request for a search warrant was made, even though there was ample time and opportunity to make such an investigation.

An official of the electric utility company also testified at the hearing. He stated that his company's records showed that there were two separate users of electricity at 4637 Newport on October 20, 1970. Their billing records were designated as "floor one" and "floor two." In response to a question by the Court, the witness testified that it was not all unusual for a two-family dwelling in the City of Detroit to have only one street address.

Agent McCoy testified that, after the pick-up was made from 4637 Newport at about 6:30 p.m. on October 20, 1970, he

was sent out to that address for the sole purpose of obtaining a specific description of the premises for the search warrant. He stated that when he drove by the address it was already dark and it was raining. He drove slowly by the building twice and was able to see the house number, as well as get a general description of the external appearance of the structure. He did not stop his car and try to get any closer than the street for fear of being detected. He testified that the porch light, located directly above the door, was on, but that he did not notice the two mailboxes even though they are positioned just below the house number.

The agent obviously assumed that since the building at 4637 Newport had only a single front door and single house number, it was a one-family dwelling. While that assumption on its face, does not seem unreasonable, the two mailboxes, doorbells and utility meters all clearly rebut that assumption.

The Government contends that the decision to seek a search warrant for the premises at 4637 Newport was not made until 6:30 p.m. on October 20, 1970, and thus the business offices of the electric and telephone companies, from whose records they could also have learned of the dual occupancy, were closed for the day. Testimony was given by the telephone company official that, if the need were great enough, it would be possible to gain access to the records after regular business hours. Furthermore, the Government admits that it had knowledge that a narcotics pick-up was to be made from the Newport address early in the morning of October 20, 1970. Indeed, the Newport address was discovered at about 8:30 or 9:00 a.m. that morning from information provided by the telephone company as to the name and address of the subscriber listed for the intercepted calls.

The law governing this situation has been long established. Nearly half a century ago, in Tynan v. United States, 297 F. 177, 179 (9th Cir.), cert. denied, 266 U.S. 604, 45 S.Ct. 91, 69 L.Ed. 463 (1924), the court stated: "No doubt a general search warrant for an entire building . . . occupied by different families or different tenants, is ordinarily null and void." *See also,* United States v. Mitchell, 274 F. 128 (N.D.Cal. 1921); Hogrefe v. United States, 30 F. 2d 640 (9th Cir.1929). In United States v. Barkouskas, 38 F.2d 837 (M.D.Pa. 1930), the search warrant in question authorized the search of the premises "located at 1919 Jackson St., Scranton, Pa." The warrant did not include the name of the defendant or the occupants of the premises nor any designation of any part of the premises. The facts were that the owner of the building and his family occupied the second floor while the defendant leased the first floor. The court held that, "under these facts, there were two places included in the description, and the description was a general and not a 'particular' description." *Id.* at 838. The search was ruled illegal and the evidence obtained thereby ordered suppressed.

In United States v. Diange, 32 F. Supp. 994 (W.D.Pa.1940), the search warrant being challenged described only a "dwelling house," whereas it was conceded by the Government that the structure contained two stories and was occupied and in the possession of two families, each family being in possession of a different part of the dwelling house. The court held, at page 994: "Under the facts, as conceded, the description of the property contained in the aforesaid search warrants was not in sufficient compliance with the Fourth Amendment . . . ."

In United States v. Hinton, 219 F.2d 324 (7th Cir.1955), the court reversed a conviction for purchasing and selling narcotics on the ground that a search warrant was invalid for failing to particularly describe the place to be searched and the search made thereunder was thus illegal. The warrant had identified the "basement and three floors" of an apartment building as the place to be searched, but neither it nor

the supporting affidavit specified the particular apartment or apartments in which the alleged sales were made. The court stated, at pages 324–325:

> For purposes of satisfying the Fourth Amendment, searching two or more apartments in the same building is no different than searching two or more completely separate houses. Probable cause must be shown for searching each house or, in this case, each apartment. If such cause is shown there is no reason for requiring a separate warrant for each resident. A single warrant may cover several different places or residences in a single building. But probable cause must be shown for searching each residence unless it be shown that, although appearing to be a building of several apartments, the entire building is actually being used as a single unit.

Federal courts have consistently held that the Fourth Amendment's requirement that a specific "place" be described when applied to dwellings refers to a single living unit (the residence of one person or family). Thus, a warrant which describes an entire building when cause is shown for searching only one apartment is void. United States v. Barkouskas, D.C., 38 F.2d 837; United States v. Diange, D.C., 32 F.Supp. 994; United States v. Chin On, D.C., 297 F. 531; United States v. Innelli, D.C., 286 F. 731; United States v. Mitchell, D.C., 274 F. 128. The basic requirement is that the officers who are commanded to search be able from the "particular" description of the search warrant to identify the specific place for which there is probable cause to believe that a crime is being committed. This requirement may be satisfied by giving the address of the building and naming the person whose apartment is to be searched. Kenney v. United States, 81 U.S.App.D.C. 259, 157 F.2d 442; Shore v. United States, 60 App.D.C. 137, 49 F.2d 519.

*Hinton* was recently held to be controlling precedent in United States v. Higgins, 428 F.2d 232 (7th Cir.1970).

■ The Government has argued that the premises at 4637 Newport, while being constructed as a two-family dwelling, were nevertheless being used as a single, two-story unit, and that there was thus no need to identify either unit in the search warrant. The evidence, however, indicates that while there is some question as to who, if anyone, was actually renting the first floor unit in which the defendants were arrested, the second floor was rented to and was occupied by Mr. and Mrs. Maurice Phillips. Even though it was admitted that Mr. Phillips was and is related to the defendant Gladys Harris, it cannot be concluded that the entire structure was being occupied or used as a single unit. The exception to the general rule, therefore, has no application here.

The Government further contends that Steele v. United States, 267 U.S. 498, 45 S.Ct. 414, 69 L.Ed. 757 (1925), fully supports its position that the search warrant at issue here was valid. This reliance, however, is misplaced. In *Steele*, the warrant described the place to be searched as a building located at 611 West 46th Street, Manhattan, New York. The building actually searched had two street addresses, 609 and 611. The situation in *Steele* is distinguishable on its facts from those presented here in two most significant respects: (1) the entire building was under lease to the defendant; and (2) "there was no real division in fact or in use of the building into separate halves." Id. at 502–503, 45 S.Ct. at 416. The Supreme Court held: "It is enough if the description is such that the officer with a search warrant can, with reasonable effort ascertain and identify the place intended." *Id.* Under that rule as applied to those facts the warrant was upheld.

Search warrants with faulty descriptions of the place to be searched have been upheld in a number of cases. *See, e.g.,* Hanger v. United States, 398 F.2d

91 (8th Cir.1968), cert. denied, 393 U.S. 1119, 89 S.Ct. 995, 22 L.Ed.2d 124 (1969); United States v. Goodman, 312 F.Supp. 556 (N.D.Ind.1970); United States v. Pisano, 191 F.Supp. 861 (S.D. N.Y.1961); United States v. Joseph, 174 F.Supp. 539 (E.D.Pa.1959), aff'd 278 F. 2d 504 (3d Cir.), cert. denied, 364 U.S. 823, 81 S.Ct. 59, 5 L.Ed.2d 52 (1960); United States v. Contee, 170 F.Supp. 26 (D.D.C.1959). In United States v. Sklaroff, 323 F.Supp. 296 (S.D.Fla. 1971), the court reviewed these prior decisions and concluded, at page 321:

> The foregoing decisions illustrate the principle that the determining factor [in deciding] whether a search warrant describes the premises to be searched with sufficient particularity is not whether the description given is technically accurate in every detail but rather whether the description is sufficient to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premises might be mistakenly searched which is not the one intended to be searched under the search warrant.

The search warrant being challenged in *Sklaroff* erroneously described the place to be searched, apartment 301, as being on the *second* floor when, in actuality, it was located on the *third* floor of the apartment building. Applying the principles quoted above to those facts, the court stated, at page 321:

> [T]he error in describing Apartment 310 as being on the second rather than the third floor of Building Number 3 was of such a minor nature as not to invalidate the search warrant. There was only one apartment in that building with the Numerals 310 on the door, and the F.B.I. Agents searched that apartment. *There was little pos-sibility under the facts of this case that an apartment not intended to be searched could have been searched through mistake.* [emphasis supplied].[1]

█ Given the facts in the instant case, it can only be said that under the description of the place to be searched contained in the search warrant—4637 Newport—the executing officers could not possibly have known whether they were to search either or both of the upper and lower living units. Since the officers did not even know at that time that the building was a two-family dwelling, they could not possibly have known which of the two separate and distinct living units was to be searched. Their solution to the dilemma was to search both units—a result which this Court cannot condone since probable cause for seaching both floors had never been established. The only dwelling unit of the premises as to which probable cause existed was that unit which contained the telephone to which the intercepted calls were made.

The Government has argued, in effect, that since the defect in the description of the premises to be searched contained in the search warrant was the product of an honest mistake on the part of the officers, the error should be overlooked and the warrant upheld. The Court has no doubt that the Federal agents honestly did not know that the structure at 4637 Newport was a two-family dwelling. The test to be applied in this situation, however, is not whether the officers had actual knowledge, but the test is whether they should have known that the building was not a one-family home. In Owens v. Scafati, 273 F.Supp. 428 (D.Mass.1967), cert. denied, 391 U.S. 969, 88 S.Ct. 2043, 20 L.Ed.2d 883 (1968), where a search warrant was challenged on the same grounds as those

---

I. See, also, United States v. Goodman, 312 F.Supp. 556 (N.D.Ind.1970), where the court, in upholding a search warrant containing a minor error in the description of the place to be searched, stated, at page 558: "It does not appear that any mistake could have been made in the building to be searched."

raised here, the court ruled, at page 429:

> With regard to the contention that the search warrant failed to describe the premises with particularity, . . . there was no showing at any stage of the State court proceedings, and there has been no showing to date, that 1 Thomas Park appeared to be a multiple unit dwelling. The State court record indicates, to the contrary, that there was only one door from the outside, which opened into a hallway which gave access to the entire house. *There has been no showing that the police officers knew or should have known from its physical appearance that 1 Thomas Part was a multiple dwelling house when they applied for the warrants* . . .. [emphasis supplied].

Two companion cases, United States v. Ramos, 282 F.Supp. 354 (S.D.N.Y.1968), and United States v. Gomez, 42 F.R.D. 347 (1967), have been cited by the Government in support of its position on this point. The search warrant alleged to be defective in those cases authorized the search of "130 W. 74th St., Basement Apt., New York, N. Y." The defendant argued that this description was insufficient for the reason that the premises were a multi-unit apartment house in which there were located more than one basement apartment. While the search warrant was upheld in both *Ramos* and *Gomez*, those cases are factually distinguishable from the situation presented here. As in *Owens, supra,* the external appearance of the building gave no clue that there was more than one basement apartment. Furthermore, as stated by the court in *Ramos,* 282 F. Supp. at 355, "[I]t would have been impossible to discover that there was more than one basement apartment until after the rooms in the basement had been searched."

In United States v. Santore, 290 F.2d 51 (2d Cir.1960), cert. denied, 365 U.S. 834, 81 S.Ct. 749, 5 L.Ed.2d 744 (1961), the defendant also moved to have certain evidence suppressed on the grounds that the search warrant under which Federal agents had entered his apartment and seized the material was invalid for failure to particularly describe the place to be searched. The description contained in the warrant identified "the premises known as 164 Hill Street, Elmont, Long Island, New York, being a one family house." The defendant contended that since the house was not a one-family house, but two-family, being occupied by two families, the warrant was fatally defective. While the warrant was held not to be invalid, and while the facts are, in general, quite similar to those presented here, the following excerpt from the court's opinion in *Santore* clearly illustrates why the two cases are distinguishable:

> The house at 164 Hill Street is to all outward appearances a one-family house with a front door and a side door, and it had always been registered with the local authorities as a one-family dwelling. A few years prior to the search the interior of the house was renovated and subdivided by Orlando, but, in contravention of local ordinances, no permission to do so was obtained from the proper authorities. Consequently no notice of this subdivision was ever given to the local officials.

> In view of these facts we think that the issued warrant described the premises to be searched with that "practical accuracy" we have held to be necessary. United States v. Fitzmaurice, 2 Cir., 1930, 45 F.2d 133. The description in the warrant was in accordance with the outward appearance of the structure, cf. Carney v. United States, 6 Cir., 1935, 79 F.2d 821, and in view of the concealment by Orlando of the interior alteration made by him it would be absurd to say that the Government was on notice as to it. The agents were not warned of a possible dual occupancy of the house until after they had shown the copy of the warrant to Orlando and had entered inside.

In neither *Owens, Ramos, Gomez* nor *Santore* did the court find that the officers who either applied for or executed the respective search warrants could have or should have known that the description of the place to be searched contained in the warrant was not accurate; on the contrary, in each of those cases the court expressly stated that there was no way that the officers could have known of the misdescription in the warrant before execution. Given the circumstances of this case, that conclusion cannot be reached here. The dual mailboxes, doorbells and utility meters provided ample notice that the structure located at 4637 Newport was not a single-family dwelling. The description of the premises in the search warrant was not in accordance with the outward appearance of the structure. While there is no reason to believe that the Government agents did not honestly believe that the building was a single-family dwelling, the failure of the search warrant to accurately describe the place to be searched, as expressly required by the Fourth Amendment, simply cannot be excused. A good-faith, inadvertent violation of a Constitutionally-protected right is no less an infringement of that right. As stated in Gouled v. United States, 255 U.S. 298, 304, 41 S.Ct. 261, 263, 65 L.Ed. 647 (1921):

> It has been repeatedly decided that [the Fourth and Fifth] amendments should receive a liberal construction, so as to prevent stealthy encroachment upon or "gradual depreciation" of the rights secured by them, by imperceptible practice of courts or by well-intentioned, but mistakenly overzealous, executive officers.

The search warrant being invalid, the evidence seized under the authority of that warrant must be suppressed unless there is another, independent ground upon which the seizure may be justified.

*Applicability of the "Plain-View" Doctrine*

■ The Government contends, in the alternative, that even if the search warrant was invalid, the search and seizure was nevertheless proper and the evidence obtained thereby admissible since the items seized were within the plain-view of the arresting officers.

The Federal agent who seized the items involved here testified that when he went to 4637 Newport to execute the search warrant which he presumed to be valid, he mounted the steps to the front porch but before going to the door he crossed the porch to look into the front windows. He stated that the draperies covering these windows had not been pulled completely shut, leaving a narrow crack through which, by bending or stooping over, he could look into the front room. He testified further that he was able to see the defendants sitting at a table in the front room, engaging in what appeared to be the preparation and packaging of heroin. Immediately thereafter he and the officers accompanying him entered the house. Although defendants maintain that the window draperies were completely closed on the night in question, the Court finds that they were as the officer testified, open enough to permit his view. Cases dealing with the "discovery of evidence in plain-view" admittedly require that discovery be "inadvertent". Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). An "inadvertent viewing" has been characterized by one court as "seeing through eyes that are neither accusatory nor criminally investigatory." Marshall v. United States, 422 F.2d 185, 189 (5th Cir.1970). Since the sole purpose of the agents' presence on defendants' porch here was to gain entry to the house to search for heroin and other narcotic drugs, it cannot be concluded that Agent McCoy "inadvertently" peered through the crack in the window draperies after stepping onto the front porch at 1:30 a.m. and spotted suspected narcotics. What he saw would not have been visible to "any curious passerby." James v. United States, 135 U.S.App.D. C. 314, 418 F.2d 1150, 1151 n.1 (1969).

However, his observation involves more than the search for and seizure of evidence. When the officer peeked into the window he not only saw evidence of an earlier crime but was actually observing a crime being committed. The persons he observed were in possession of heroin and preparing it for sale or distribution. If what he had observed had been a robbery in progress or a murder attempt and he had entered to prevent the execution of the crime or to apprehend the assailant no one would question his right to have done so. At the time the officer made this observation he had not yet closely approached the front door. Applying the objective test, the Court finds that his failure to observe the two-family character of the dwelling demanded by reason of the two doorbells and two mailboxes immediately adjacent to the front door was yet excusable. Moreover, while this Court is inclined to believe that police officers generally have no right to intrude upon the front porch of a private home in the dead of night (see Davis v. United States, 327 F.2d 301, 303 (9th Cir.1964)), the fact that the porch involved here was a common area to a multiple-family dwelling may well serve to avoid that ruling. (See United States v. Freeman, 426 F.2d 1351, 1353 (9th Cir.1970)).

Although unable to find any direct authority for its conclusion the Court is of the opinion that officers observing a crime being committed may act to terminate its commission and that that is what the officer did in the instant case.

The Court reaffirms its prior holding that the search warrant was invalid; it finds however that the arrest of the defendants in the instant case and the seizure of narcotics from the immediate presence of the defendants and from the table in the living room was lawful and the evidence so seized will not be suppressed.