PEOPLE v FRANKS

1. SEARCHES AND SEIZURES—SEARCH WARRANT—DESCRIPTION OF
   PREMISES—SUB-UNITS—SUFFICIENCY OF DESCRIPTION.

   A description in a search warrant must specify the appropriate
   sub-unit where a known apartment building, hotel, or rooming
   house is involved; a search warrant which fails to specify a
   known sub-unit is constitutionally defective.

2. SEARCHES AND SEIZURES—CONSTITUTIONAL LAW—SEARCH WARRANT
   —DESCRIPTION OF PREMISES—SUFFICIENCY OF DESCRIPTION.

   A search warrant described the place to be searched with suffi-
   cient particularity to meet the requirements of the United
   States and Michigan constitutions although it did not specify
   that there were separate living units in the described house but
   where from all indications the house appeared to be a single
   living unit and the police officers did not know nor should they
   have been expected to know of the multi-unit character of the
   house (US Const, Am IV; Const 1963, art 1, § 11).

3. SEARCHES AND SEIZURES—PROBABLE CAUSE—SEARCH WARRANT—
   DESCRIPTION OF PREMISES.

   Probable cause existed to search the entire premises where the
   search warrant described the house which was searched with-
   out reference to any sub-units within the house and a defend-
   ant alleged that the room he occupied was rented as a separate
   residence but it was shown that the occupants of the house
   were of a transient nature, exchanging sleeping places, and
   therefore the entire building functioned as a single unit.

4. SEARCHES AND SEIZURES—DRUGS AND NARCOTICS—SEARCH WAR-
   RANT—PLAIN VIEW.

   A bag of marijuana was properly seized during the search of a

---

REFERENCES FOR POINTS IN HEADNOTES

[1–3] 68 Am Jur 2d, Searches and Seizures §§ 74, 75, 77.
   Search warrant: Sufficiency of description of apartment or room to
   be searched in multiple-occupancy structure. 11 ALR3d 1330.
[3] Transiently occupied room in hotel, motel, or rooming-house as
   within provision forbidding unreasonable searches and seizures.
   86 ALR2d 984.
[4] 68 Am Jur 2d, Searches and Seizures § 113.

house even though it was not specified in the search warrant where it was contraband in the plain view of officers conducting the search in an area where they had a right to be.

Appeal from Recorder's Court of Detroit, Elvin L. Davenport, J. Submitted Division 1 May 16, 1974, at Detroit. (Docket No. 17596.) Decided August 13, 1974.

Dennis C. Franks was charged with possession of marijuana with intent to deliver. From denial of his motion to suppress the evidence of his possession, defendant appeals by leave granted. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Patricia J. Boyle,* Principal Attorney, Research, Training and Appeals, and *Thomas M. Khalil,* Assistant Prosecuting Attorney, for the people.

*Joseph Covington,* for defendant.

Before: Lesinski, C. J., and J. H. Gillis and Bronson, JJ.

Lesinski, C. J. Defendant Dennis C. Franks was charged with unlawful possession of marihuana with intent to deliver, MCLA 335.341(1)(c); MSA 18.1070(41)(1)(c). This Court granted defendant leave to appeal following the trial court's denial of his motion to suppress the evidence of his possession of marihuana.

Defendant contends that the search warrant purportedly authorizing the seizure of this evidence failed to describe the place to be searched with the degree of particularity required by US

Const, Am IV; Const 1963, art 1, § 11, and MCLA 780.654; MSA 28.1259(4).[1]

The salient facts surrounding the issuance of this warrant and the search and seizure resulting in defendant's arrest are as follows: Between May 12, 1972 and June 24, 1972, Detroit police officers observed known narcotics users arriving at 19840 Winston, staying a short while and then leaving. The house described at 19840 Winston is a 1-1/2 story dwelling painted green with white trim, located in the city of Detroit. From its outward appearance it gave every indication of being a single family residence. On June 21, 1972, an informant, whose reliability and credibility were sworn to by Police Officer Douglas Tally, went to 19840 Winston and purchased bulk heroin from a man known as "Ed". On June 22, 1972, on the basis of this information sworn to by Officer Tally, Judge Joseph P. Maher issued a search warrant for "heroin, other narcotic drugs and paraphernalia". The specific description of the place to be searched was:

"The entire premises known as 19840 Winston, the second house north of Frisbee on the east side of the street. A one and one-half story frame dwelling painted

---

[1] US Const, Am IV:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Const 1963, art 1, § 11:

"The person, houses, papers, and possessions of every person shall be secure from unreasonable searches and seizures. No warrant to search any place or to seize any person or things shall issue without describing them, nor without probable cause, supported by oath or affirmation."

MCLA 780.654; MSA 28.1259(4):

"Each warrant shall designate and describe the house or building or other location or place to be searched and the property or thing to be seized."

light green with white trim, located in the City of Detroit, County of Wayne, State of Michigan."

On that same date police officers executed this warrant on 19840 Winston. There were 14 people in the house at the time that police officers approached the door, were refused admittance, and thereupon forced the door open. Once inside the house they conducted a general search of the premises. Defendant was in the southeast bedroom of the dwelling with four other people. Upon entry into defendant's room police officers observed a man bending over a brown paper bag in the center of the room. An examination of the contents of this bag disclosed 818.30 grams of marihuana.

Defendant contends that 19840 Winston is a collective in which he rented and had exclusive occupancy and control of the southeast bedroom in which the marihuana was seized. Defendant has maintained that the search warrant's failure to describe his room as a place to be searched made the warrant and accompanying search and seizure constitutionally defective. Accordingly, he argues that the trial court should have granted his motion to suppress.

We note at the outset of this opinion that the courts of this state have never delineated the specificity required in a search warrant's description of the place to be searched where the multi-unit character of the premises is not apparent. Nevertheless, we believe that there is ample Federal and State authority on this matter. See 11 ALR3d 1330.

As a basic proposition of law it has long been recognized that a search warrant which fails to specify a known sub-unit is constitutionally defective. *Tynan v United States,* 297 F 177 (CA 9, 1924), *cert den* 266 US 604; 45 S Ct 91; 69 L Ed

463 (1924). Consequently, where a known apartment building, hotel, or rooming house is involved, the warrant must specify the appropriate sub-unit to be valid. *United States v Barkouskas,* 38 F2d 837 (MD Pa, 1930); *United States v Mitchell,* 274 F 128 (ND Cal, 1921).

In *United States v Hinton,* 219 F2d 324, 325 (CA 7, 1955), the Court stated:

"For purposes of satisfying the Fourth Amendment, searching two or more apartments in the same building is no different than searching two or more completely separate houses. Probable cause must be shown for searching each house or, in this case, each apartment. If such cause is shown there is no reason for requiring a separate warrant for each resident. A single warrant may cover several different places or residences in a single building. But probable cause must be shown for searching each residence unless it be shown that, although appearing to be a building of several apartments, the entire building is actually being used as a single unit."

In *United States v Esters,* 336 F Supp 214 (ED Mich, 1972), Judge Cornelia Kennedy stated that where officers involved do not know that the structure is a two-family dwelling "the test is whether they should have known that the building was not a one-family home".

In *Esters* the court granted a motion to suppress where it found that "a person who made a reasonable observation of the premises should have known that the structure at 4637 Newport was a two-family dwelling". In so ruling the court distinguished a series of cases which had held that where officers are unable to determine the two-family character of a dwelling, a warrant is nonetheless valid. The court stated at 221:

"In neither *Owens [infra], Ramos [infra], Gomez*

*[United States v Gomez,* 42 FRD 347 (SD NY, 1967)], nor *Santore [infra],* did the court find that the officers who either applied for or executed the respective search warrants could have or should have known that the description of the place to be searched contained in the warrant was not accurate; on the contrary, in each of those cases the court expressly stated that there was no way that the officers could have known of the misdescription in the warrant before execution. Given the circumstances of this case, that conclusion cannot be reached here. The dual mailboxes, doorbells and utility meters provided ample notice that the structure located at 4637 Newport was not a single-family dwelling. The description of the premises in the search warrant was not in accordance with the outward appearance of the structure. While there is no reason to believe that the Government agents did not honestly believe that the building was a single-family dwelling, the failure of the search warrant to accurately describe the place to be searched, as expressly required by the Fourth Amendment, simply cannot be excused."

In *Owens v Scafati,* 273 F Supp 428, 429 (D Mass, 1967), *cert den* 391 US 969; 88 S Ct 2043; 20 L Ed 2d 883 (1968), a search warrant was held to describe the premises to be searched with sufficient particularity in spite of its failure to recognize the dwelling's multi-unit character, where:

"There has been no showing that the police officers knew or should have known from its physical appearance that 1 Thomas Park was a multiple dwelling house when they applied for the warrants."

In *United States v Ramos,* 282 F Supp 354 (SD NY, 1968), a search made pursuant to a warrant describing the place to be searched as "130 West 74th Street, basement apartment, New York, New York" was held valid even though there was more than one basement apartment. The Court stated at 355:

"[I]t would have been impossible to discover that there was more than one basement apartment until after the rooms in the basement had been searched."

Again in *United States v Santore,* 290 F2d 51 (CA 2, 1960), *cert den,* 365 US 834; 81 S Ct 749; 5 L Ed 2d 744 (1961), the validity of the search warrant turned on the ability of the officers, upon making a reasonable observation, to determine whether the structure was a two-family dwelling. In *Santore* the Court held that from all outward appearances, the dwelling in question appeared to be a one-family house and therefore a warrant which so described it was valid.

Absent a finding by the trial court that the police officers knew or should have known when they obtained the search warrant that the building involved was multi-unit in character, the warrant and resultant search and seizure have been held to be constitutionally permissible. *People v Lucero,* 174 Colo 278; 483 P2d 968 (1971); *State v Chisholm,* 7 Wash App 279; 499 P2d 81 (1972).[2]

In the case at bar, the record mandates the conclusion that the officers did not know nor should they have been expected to know that there were allegedly separate living units at 19840 Winston. From all indications this house appeared to be a single living unit. We therefore find that the search warrant in question described the place to be searched with sufficient particularity to meet the requirements of the Fourth Amendment of the United States Constitution and the concomitant provisions of art 1, § 11 of the Michigan Constitution.

This Court also notes that even if we were to

[2] In *People v Avery,* 173 Colo 315; 478 P2d 310 (1970), the Court made the specific finding that the police officer should have known that the building involved was a rooming house and consequently the search warrant was held invalid.

reject the substantial authority previously cited and read the Fourth Amendment as requiring absolute accuracy in a search warrant, a proposition which we believe to be universally rejected by the courts of this land, we would nevertheless find that probable cause existed under this warrant to search the entire premises at 19840 Winston. As Judge Kennedy stated in *Esters, supra,* at 218, citing *United States v Hinton, supra,* at 326:

" 'But probable cause must be shown for searching each residence unless it is shown that, although appearing to be a building of several apartments, *the entire building is actually being used as a single unit.' "* (Emphasis supplied.)

By defendant's counsel's own assertion in his motion to suppress, 19840 Winston functioned as a single unit.

*"Mr. Covington:* There is one other point I would like to make here. The premises at 19840 Winston was not previously owned by any one or the other—a number of occupants were there. They would exchange sleeping places, going and,—going in and out of the place."

With the interchange of sleeping places among transient occupants, we find that for purposes of the issuance of this search warrant, 19840 Winston was used as a single unit. An examination of the search warrant and supporting affidavit further convinces this Court that the search warrant itself stated sufficient facts to provide probable cause for the issuance of this warrant.

The validity of the search warrant allowed the officers to enter and search the entire dwelling for heroin, other narcotic drugs and paraphernalia. Once officers entered defendant's room they observed a man bending over a bag which was in

plain view. An examination of this bag disclosed that it contained 818.30 grams of marihuana. The bag of marihuana being contraband "in plain view" in an area in which the officers had a right to be, it was seizable even though it was not specified in the warrant. As the United States Supreme Court has stated in *Harris v United States,* 331 US 145, 155; 67 S Ct 1098, 1103; 91 L Ed 1399, 1408 (1947):

"If entry upon the premises be authorized and the search which follows be valid, there is nothing in the Fourth Amendment which inhibits the seizure by law-enforcement agents of government property the possession of which is a crime, even though the officers are not aware that such property is on the premises when the search is initiated."

We find that the issuance of this search warrant and the resulting search and seizure conformed in all respects to constitutional requirements.

Affirmed.

All concurred.