# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
May 19, 2015

Plaintiff-Appellee,

v

No. 320032
Huron Circuit Court
LC No. 13-305667-FH

RONALD MATTHEW HARTMAN, JR.,

Defendant-Appellant.

Before: BECKERING, P.J., and CAVANAGH and SAAD, JJ.

PER CURIAM.

Defendant appeals as of right his jury convictions of operating or maintaining a controlled substance laboratory involving methamphetamine, MCL 333.7401c(2)(f), operating or maintaining a controlled substance laboratory near a residence, MCL 333.7401c(2)(d), manufacture of methamphetamine, MCL 333.7401(2)(b)(*i*), and possession of methamphetamine, MCL 333.7403(2)(b)(*i*). We affirm in part, vacate in part, and remand for the ministerial correction of the judgment of sentence.

A search warrant was executed at a house in which defendant lived after heroin was purchased there through three separate "controlled buys." A methamphetamine laboratory was discovered in a bedroom of the house and defendant's wallet was found in that bedroom. Defendant was subsequently arrested and admitted to a police officer that he had made methamphetamine at that house one time. At trial, defendant's roommate testified that defendant lived in the bedroom where the methamphetamine laboratory was discovered and he had seen defendant make methamphetamine on six occasions. Defendant testified that he never made methamphetamine at the house, but had watched other people make it on several occasions. Defendant admitted that he told a police officer he had made methamphetamine, but he had meant to say that someone else made it.

On appeal, defendant argues that his right against double jeopardy was violated by his convictions for both the offense of operating or maintaining a controlled substance laboratory involving methamphetamine, and the offense of operating or maintaining a controlled substance laboratory near a residence. After de novo review of this question of law, we disagree. See *People v Calloway*, 469 Mich 448, 450; 671 NW2d 733 (2003).

The Fifth Amendment of the United States Constitution and Article I, § 15 of the Michigan Constitution protect a criminal defendant from being twice placed in jeopardy, or

-1-

subject to multiple punishments, for the same offense. *Id*.; *People v Lett*, 466 Mich 206, 213; 644 NW2d 743 (2002). Whether two offenses constitute the "same offense" is determined under the "same elements" test set forth in *Blockburger v United States*, 284 US 299, 304; 52 S Ct 180; 76 L Ed 2d 306 (1932). *People v Smith*, 478 Mich 292, 315-316; 733 NW2d 351 (2007). Under that test, if each offense requires proof of a fact that the other does not, there is no double jeopardy violation. *Id*. at 306-307.

MCL 333.7401c provides, in relevant part:

(1) A person shall not do any of the following:

(a) Own, possess, or use a vehicle, building, structure, place, or area that he or she knows or has reason to know is to be used as a location to manufacture a controlled substance in violation of section 7401 or a counterfeit substance or a controlled substance analogue in violation of section 7402.

* * *

(2) A person who violates this section is guilty of a felony punishable as follows:

(a) Except as provided in subdivisions (b) to (f), by imprisonment for not more than 10 years or a fine of not more than $100, 000.00, or both.

* * *

(d) If the violation occurs within 500 feet of a residence, business establishment, school property, or church or other house of worship, by imprisonment for not more than 20 years or a fine of not more than $100,000.00, or both.

* * *

(f) If the violation involves or is intended to involve the manufacture of a substance described in section 7214(c)(*ii*), by imprisonment for not more than 20 years or a fine of not more than $25,000.00, or both. [Footnotes omitted.]

MCL 333.7214(c)(*ii*) includes as a "schedule 2" controlled substance: "Any substance which contains any quantity of methamphetamine, including its salts, stereoisomers, and salts of stereoisomers."

In support of defendant's double jeopardy argument, he relies on this Court's holding in *People v Meshell*, 265 Mich App 616, 618; 696 NW2d 754 (2005). In that case, we held that convictions under MCL 333.7401c for both the offense of operating or maintaining a controlled substance laboratory and for the offense of doing so near a residence violated double jeopardy under the same elements test. *Id*. at 630. However, as our Supreme Court explained in *People v Routley*, 485 Mich 1075; 777 NW2d 160 (2010), MCL 333.7401c was amended after *Meshell* was decided. In *Routley*, as in this case, the defendant was convicted under both MCL

333.7401c(2)(d) and (2)(f). In his application to our Supreme Court, *Routley* argued for the first time that these convictions violated double jeopardy under the same elements test. *Routley*, 485 Mich at 1075. The Court rejected that argument holding:

> [E]ven if defendant's double jeopardy challenge had been preserved, we would conclude that each offense requires proof that the other does not. Here, § 7401c(2)(f) requires proof that the laboratory involved "the manufacture of a substance described in section 7214(c)(*ii*)," which specifically proscribes only methamphetamine and "its salts, stereoisomers, and salts of stereoisomers," and § 7401c(2)(d) does not; and § 7401c(2)(d) requires proof that the laboratory was "within 500 feet of a residence," and § 7401c(2)(f) does not. [*Id*. at 1075-1076.]

We agree with the analysis in *Routley*. As required under the *Blockburger* same elements test, each offense at issue here required proof of an element that the other offense did not require. See *Blockburger*, 284 US at 304; *Smith*, 478 Mich at 315-316. That is, defendant was convicted under the same base offense of violating MCL 333.7401c(1)(a), but under two different aggravating circumstances. The first aggravating circumstance was that the violation occurred within 500 feet of a residence, business, school, or church contrary to § 7401c(2)(d). The second aggravating circumstance was that the violation involved the manufacture of not just any controlled substance, but the manufacture of methamphetamine contrary to § 7401c(2)(f). Accordingly, each offense required proof of an element that the other did not and no double jeopardy violation occurred.

Next, defendant argues that his motion to quash the charge of possession of methamphetamine should have been granted because no amount of methamphetamine was confiscated by the police. We agree.

> A circuit court's decision to grant or deny a motion to quash charges is reviewed de novo to determine if the district court abused its discretion in binding over a defendant for trial. A district court must bind over a defendant for trial when the prosecutor presents competent evidence constituting probable cause to believe that a felony was committed and that the defendant committed the offense. A district court's finding of probable cause will not be disturbed unless the determination is wholly unjustified by the record. [*People v Jenkins*, 244 Mich App 1, 14; 624 NW2d 457 (2000) (internal citations omitted).]

MCL 333.7403 provides:

> (1) A person shall not knowingly or intentionally possess a controlled substance . . . except as otherwise authorized by this article.

> (2) A person who violates this section as to:

> * * *

> (b) Either of the following:

-3-

(*i*) A substance described in section 7212(1)(h) or 7214(c)(*ii*) is guilty of a felony punishable by imprisonment for not more than 10 years or a fine of not more than $15,000.00, or both.

The substance described in § 7214(c)(*ii*) is "any quantity of methamphetamine."

The charges against defendant arose after a search was executed at the house where defendant lived, but methamphetamine was not confiscated during that search. In fact, the police did not ever discover and recover methamphetamine. Nevertheless, defendant was charged with possession of methamphetamine. To prove possession of methamphetamine, the prosecutor must first establish that the controlled substance actually existed. See *People v Hartuniewicz*, 294 Mich App 237, 248; 816 NW2d 442 (2011), citing *People v Wolfe*, 440 Mich 508, 516-517; 489 NW 748, mod 441 Mich 1201 (1992). That is, before considering the issue of "possession," the issue whether methamphetamine even existed must be considered. In this case, there was no evidence that methamphetamine existed, i.e., that a substance existed that had the properties of methamphetamine. As the dissent acknowledges, there was testimony from a witness who lived at the house who claimed to observe defendant making "methamphetamine," but that witness had no way of knowing whether defendant actually, in fact, made methamphetamine. And a "strong chemical smell" coming from defendant's bedroom during the police search is not methamphetamine. In fact, the substances that were recovered during the search were analyzed by the State Police, which concluded: "No controlled substance detected."

The facts of this case are distinguishable from those of the cases relied upon by the dissent. For example, in *Wise v State*, 321 Ga App 39; 740 SE2d 850 (2013), after the police recovered 191 hits of crack cocaine, the defendant was charged with possession of cocaine with the intent to distribute, but the cocaine was not admitted into evidence at the defendant's trial. *Id*. at 39, 46. Similarly, in *People v Marinos*, 260 Cal App 2d 735; 67 Cal Rptr 452 (1968), after the defendant smoked a marijuana cigarette in front of an undercover police officer, she was arrested and charged with possession of marijuana but, again, the illegal drug was not admitted into evidence at the defendant's trial. *Id*. at 737-738. The courts in both of those cases held that the illegal drugs—that were actually recovered by the police—did not have to be produced at trial to satisfy the *corpus delicti* rule.

But, here, methamphetamine was never recovered by police. And there was no evidence that methamphetamine actually existed; that a substance existed that would test positive for methamphetamine. The issue of "possession" need not be addressed in the absence of such evidence. The *corpus delicti* of the crime of possession of methamphetamine was not established, thus, defendant's inculpatory statements were not admissible. See *People v Coapman*, 326 Mich 321, 329; 40 NW2d 167 (1949). Consequently, defendant's bindover on the charge of possession of methamphetamine was not supported by probable cause and defendant's motion to quash that charge should have been granted. And we disagree with the prosecution that this error was harmless. Because there is no evidence that defendant possessed any amount of methamphetamine, his conviction on that charge was not supported by the evidence and must be vacated. A rational trier of fact could not have found that defendant was guilty beyond a reasonable doubt of possessing methamphetamine. See *Wolfe*, 440 Mich at 515.

Finally, defendant argues that the trial court should have granted his motion to suppress the evidence seized during the search because his Fourth Amendment rights were violated. We disagree. We review the trial court's findings of fact on a motion to suppress for clear error and its ultimate decision de novo. *People v Hyde*, 285 Mich App 428, 436; 775 NW2d 833 (2009). "We review de novo whether the Fourth Amendment was violated and whether an exclusionary rule applies." *Id*.

The Fourth Amendment of the United States Constitution and Article 1, § 11 of the Michigan Constitution "guarantee the right of persons to be secure against unreasonable searches and seizures." *People v Kazmierczak*, 461 Mich 411, 417; 605 NW2d 667 (2000). Ordinarily, a search is reasonable if undertaken pursuant to a warrant that is issued upon probable cause. *People v Davis*, 442 Mich 1, 10; 497 NW2d 910 (1993). "Generally, evidence obtained in violation of the Fourth Amendment is inadmissible as substantive evidence in criminal proceedings." *Kazmierczak*, 461 Mich at 418.

Defendant first contends that the affidavit of the lead officer, Detective Kevin Knoblock, contained false representations. Specifically, defendant refers to Knoblock's averment that defendant appeared to be under the influence of narcotics during a wellness check conducted before the search. At trial, however, Knoblock admitted that his police report written after the wellness check stated that defendant did not appear to be under the influence of any substances. Knoblock conceded that his statements were contradictory and could offer no explanation.

When a defendant challenges an affidavit supporting a warrant on the ground that it contains false averments, he must show "by a preponderance of the evidence[] that the affiant knowingly and intentionally, or with a reckless disregard for the truth, inserted false material into the affidavit and that the false material was necessary to the finding of probable cause." *People v Ulman*, 244 Mich App 500, 510; 625 NW2d 429 (2001). "The invalid portions of an affidavit may be severed, and the validity of the resultant warrant may be tested by the information remaining in the affidavit." *Id*. Here, although Knoblock admitted that his accounts were contradictory, it is unclear which is false. Assuming that the account in the affidavit is false, defendant failed to establish that Knoblock's false statement was necessary to the finding of probable cause. The affidavit primarily concerned heroin dealing activities at the house by defendant's roommate and the allegation related to the wellness check was not necessary to the finding of probable cause.

Defendant next argues that the affidavit contained allegations that were based on information from confidential informants, but there was no indication that those persons spoke with personal knowledge and were reliable. Defendant is correct that, when an affidavit is proffered to establish probable cause, it "must contain facts within the knowledge of the affiant rather than mere conclusions or beliefs." *People v Waclawski*, 286 Mich App 634, 698; 780 NW2d 321 (2009). "Personal knowledge can be inferred from the stated facts." *People v Martin*, 271 Mich App 280, 302; 721 NW2d 815 (2006). Further, "[a]n independent police investigation that verifies information provided by an informant can also support issuance of a search warrant." *Ulman*, 244 Mich App at 509-510.

The affidavit in this case contains several allegations that police officers were told by various people that illegal drugs were being sold out of the house. Knoblock averred that

officers then performed three controlled buys of heroin from defendant's roommate. Knoblock participated in at least two of the controlled buys, and personally confirmed that the purchased substances were heroin. Clearly Knoblock did not rely solely on the various reports he received about illegal drugs being sold out of the house. This would be a different case if Knoblock had sought a warrant based only on the anonymous calls. Instead, Knoblock provided the information regarding the anonymous calls to explain how he came to investigate defendant's roommate. The remainder of the affidavit primarily concerns Knoblock's investigation. This independent investigation that verified defendant's roommate was selling heroin was sufficient to furnish probable cause to support the search.

Defendant finally argues that his bedroom was a subunit of the house that was not included in the search warrant and should not have been searched. As defendant argues, in *People v Franks*, 54 Mich App 729, 732; 221 NW2d 441 (1974), this Court held that "a search warrant which fails to specify a known sub-unit is constitutionally defective." Thus, "where a known apartment building, hotel, or rooming house is involved, the warrant must specify the appropriate sub-unit to be valid." *Id*. at 733. However, a warrant need not specify a sub-unit if "the multi-unit character of the dwelling is not apparent and the police officers did not know and did not have reason to know of its multi-unit character." *People v Toodle*, 155 Mich App 539, 545; 400 NW2d 670 (1986).

In this case, defendant has not shown that the warrant was invalid pursuant to *Franks* because he has not established that the officers knew or had reason to know that the bedroom was defendant's subunit of the house. The search warrant affidavit does not indicate that Knoblock knew defendant was renting the specific bedroom. It is unclear what was testified to at the preliminary examination regarding the wellness visit because the transcript has not been provided. In addition, no testimony was given at the motion to suppress. At trial, Knoblock did not testify that the wellness check revealed that defendant was renting the bedroom where the methamphetamine laboratory was found. Consequently, there is no evidence of the house's alleged multi-unit character or that the bedroom was a known subunit; therefore, defendant has failed to show that the search of the bedroom was improper.

Affirmed in part, vacated in part, and remanded for the ministerial correction of the judgment of sentence with respect to the vacated conviction. We do not retain jurisdiction.


/s/ Mark J. Cavanagh
/s/ Henry William Saad

-6-