PEOPLE v TOODLE

Docket No. 82845. Submitted April 2, 1986, at Detroit. Decided
     October 21, 1986.

     Anthony Toodle was convicted of receiving and concealing stolen
        property over $100, Recorder's Court of Detroit, John H. Gillis,
        Jr., J. The evidence at trial showed that the police executed a
        search warrant calling for a search of the downstairs flat of a
        two-unit building and discovered stolen items in the basement.
        The warrant was obtained after the officers watched several
        people, including defendant, carry car parts from a car parked
        in a nearby alley into the dwelling. Defendant was observed
        carrying an automobile tire. The testimony showed that entry
        to the basement was from both the downstairs and upstairs
        flats. There was only one stairway leading to the basement, and
        both the downstairs and upstairs had access to use of that
        stairway. There were two doors leading to the stairway, one
        from the downstairs flat and one from the hallway from the
        upstairs flat. Access to these doors and to the basement open-
        ing, which had no door, was from a landing which was separate
        from the downstairs flat. To reach the basement, the officer had
        to exit the downstairs flat, enter the landing and descend the
        stairs. The officer who executed the warrant testified that he
        entered the stairs through the door which led from the down-
        stairs flat. There was no evidence presented that the basement
        was separated into a portion for the upstairs and a portion for
        the downstairs tenant. The trial court, taking judicial notice of
        the configuration of the premises, refused to suppress the
        evidence seized from the basement. Defendant appealed.

     The Court of Appeals held:

     Defendant's conviction was affirmed.

REFERENCES

Am Jur 2d, Receiving and Transporting Stolen Property §§ 3-10.
Am Jur 2d, Searches and Seizures § 77.
Propriety and legality of issuing only one search warrant to search
     more than one place or premises occupied by same person. 31
     ALR2d 864.
See also the annotations in the Index to Annotations under Receiv-
     ing and Transporting Stolen Property.

1. The court erred in taking judicial notice of the configuration of the dwelling, but the error was harmless.

2. The basement of the dwelling in question is part of the first floor flat's curtilage, the space necessary and convenient and habitually used for the family purposes and the carrying on of domestic employments.

3. Even if the tire did not have a value over $100, there was sufficient evidence from which defendant could have been found guilty of receiving and concealing stolen property over $100 as an aider and abettor on the basis of his overall participation in the theft.

4. There was sufficient evidence to support a finding of guilty knowledge.

Affirmed.

1. SEARCHES AND SEIZURES — MULTI-UNIT DWELLINGS — WARRANTS.

Where a multi-unit dwelling is involved, a search warrant, to be valid, must specify the particular sub-unit to be searched unless the multi-unit character of the dwelling is not apparent and the police officers do not know and do not have reason to know of its multi-unit character.

2. CRIMINAL LAW — RECEIVING AND CONCEALING STOLEN PROPERTY.

The elements of the crime of receiving and concealing stolen property over the value of $100 are: (1) some property must be shown to have been stolen; (2) the defendant must have received, concealed, or aided in the concealment of that property; (3) the property must be identified as being the same property which had been previously stolen; (4) the defendant must have known that the property was stolen at some time, either when he received, concealed, or aided in the concealment of the property or at some time when he wrongfully continued to possess the property; and (5) the property at the time it was knowingly received or concealed must have had a fair market value which exceeded, that is, was over $100 (CJI 26:1:01).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Deputy Chief, Civil and Appeals, and *Jan J. Raven,* Assistant Prosecuting Attorney, for the people.

*Gerald S. Surowiec,* for defendant on appeal.

Before: CYNAR, P.J., and WAHLS and E. E. BOR-
RADAILE,* JJ.

E. E. BORRADAILE, J. The principal question in
this case is whether the basement of a two-story
multiple-unit dwelling was a part of the first floor
or the curtilage for purposes of a search and
seizure under a search warrant.

The defendant was convicted by a Recorder's
Court jury of receiving and concealing stolen prop-
erty over $100 and was sentenced to from two to
five years imprisonment. He appeals from his con-
viction as of right.

The evidence at trial showed that a Detroit
police officer was patrolling on foot after receiving
information from his commander about car thefts
in the area. He spotted a blue Corvette automobile
in the driveway of premises on LaSalle. A few
minutes later, he saw a man leave the premises,
enter the Corvette, and drive it to a nearby alley.
He next saw four other individuals, including de-
fendant, leave the house, walk to the alley and
begin removing parts off the Corvette—tires, seats,
roof top and glass top. The officer saw defendant
loosen the tires, and then witnessed all five indi-
viduals carry the car parts into the house from
which they had exited. He saw defendant carry
one of the tires.

The officer and his partner requested that the
door to the premises be opened, were refused entry
and threatened to forcibly enter. They then re-
quested a search warrant, which arrived shortly
thereafter. Before it arrived, the five individuals,
including defendant, walked out of the house and
were immediately arrested. The search pursuant
to the search warrant produced car seats, top,

* Circuit judge, sitting on the Court of Appeals by assignment.

visor, wheels and tires from the basement of the home.

All five of the individuals identified by the officers were charged with three counts: (1) receiving and concealing stolen property over the value of $100, MCL 750.535; MSA 28.803, i.e., one blue Corvette; (2) breaking and entering a motor vehicle for the purpose of stealing goods of the value of not less than $5; and (3) larceny from a motor vehicle of the wheels, tires, seats, top and visor which were removed from the Corvette. Two of those charged pled guilty to receiving and concealing stolen property over $100, and a third pled guilty to attempted receiving and concealing stolen property over $100. Defendant and another chose to go to trial.

Before trial, defendant moved to suppress the evidence taken from the basement, alleging that the police officers exceeded the scope of the warrant when they searched the basement. The trial judge denied the motion, as he did a motion for reconsideration of the denial. The denial of these two motions is one of the issues raised in this appeal, the other issue being sufficiency of the evidence of a value over $100.

We affirm the trial court.

I·

A defendant seeks suppression of evidence by a motion to suppress. *People v Kinnebrew,* 75 Mich App 81; 254 NW2d 662 (1977). The trial judge may hold a separate evidentiary hearing to consider the motion. *People v Carroll,* 396 Mich 408; 240 NW2d 722 (1976); *Kinnebrew, supra,* p 83. The trial judge is free to exercise his own judgment concerning the motion and to consider testimony in addition

to that contained in the preliminary examination record. *Kinnebrew, supra,* p 83.

A trial court's ruling on a motion to suppress evidence will not be reversed on appeal unless clearly erroneous. *People v Grimmett,* 97 Mich App 212, 214; 293 NW2d 768 (1980), lv den 411 Mich 853 (1981); *People v Mackey,* 121 Mich App 748; 329 NW2d 476 (1982). If upon its review of the record this Court does not possess a definite and firm conviction that the trial court made a mistake, it must affirm. *People v Burrell,* 417 Mich 439, 449; 339 NW2d 403 (1983).

The Fourth Amendment of the United States Constitution provides in part:

> [N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Similarly, the Michigan Constitution states in part:

> No warrant to search any place or to seize any person or things shall issue without describing them, nor without probable cause, supported by oath or affirmation. [Const 1963, art 1, § 11.]

In addition, MCL 780.654; MSA 28.1259(4) states in part:

> A search warrant shall be directed to the sheriff or any peace officer, commanding such officer to search the house, building or other location or place, where any property or other thing for which he is required to search is believed to be concealed. Each warrant shall designate and describe the house or building or other location or place to be searched and the property or thing to be seized.

The search warrant in this case described the place to be searched as:

> 15903 LaSalle, a 2 story, 2 family dwelling, brick with white trim, 5th house south of Puritan on west side of street and entire curtilage. Down stairs only.

The items to be seized were described as: "T-Tops to a corvette, 2 blue bucket seats to a corvette, 4 tires with rims, unk make, taken from corvette and unk make radio/cassette player."

Defendant claims that the officers exceeded the scope of the search warrant because the warrant was limited to the "[d]own stairs only" and did not authorize a search of the basement. Defendant seems to concede that, had the search warrant not contained the term "[d]own stairs only," a search of the basement would have been proper, but argues that adding the additional words in the warrant limited the search to the main floor of the downstairs apartment only.

From the testimony, it appeared that one of the individuals involved in the auto-stripping lived downstairs and his sister lived in an upstairs apartment, with a common basement used by both the upstairs and downstairs tenants. The testimony showed that entry to the basement was from both the downstairs and upstairs flats. There was only one stairway leading to the basement, and both the downstairs and upstairs had access to use of that stairway. There were two doors leading to the stairway, one from the downstairs flat and one from the hallway from the upstairs flat. Access to these doors and to the basement opening, which had no door, was from a landing which was separate from the downstairs flat. To reach the basement, the officer had to exit the downstairs flat,

enter the landing, and descend the stairs. The officer who executed the warrant testified that he entered the stairs through the door which led from the downstairs flat. The tires of the Corvette and other parts were found strewn throughout the basement, and there was no evidence presented that the basement was separated into a portion for the upstairs and a portion for the downstairs tenant. The officer did admit that the officers also searched the upstairs flat and found the bucket seats to the Corvette. The prosecutor concedes that the seats taken from the upstairs flat were not properly seized.

This issue appears to be one of first impression in this state. The general rule, where a multi-unit dwelling is involved, is that the warrant must specify the particular sub-unit to be searched, unless the multi-unit character of the dwelling is not apparent and the police officers did not know and did not have reason to know of its multi-unit character. *People v Franks,* 54 Mich App 729; 221 NW2d 441 (1974); *Kinnebrew, supra.* See cases in Anno: *Search warrant: sufficiency of description of apartment or room to be searched in multiple-occupancy structure,* 11 ALR3d 1330. The search warrant in this case clearly complied with the general rule, since the magistrate inserted the words "[d]own stairs only" on the warrant.

Though Michigan case law indicates that a warrant for one address does not authorize a search for another address, *People v Musk,* 221 Mich 578; 192 NW 485 (1922), in this case the evidence showed that the upstairs flat was 15903 LaSalle and the address of the downstairs was 15901 La-Salle. The warrant was for "15903 LaSalle . . . [d]own stairs only," which is ambiguous, but the defendant seems not to have raised the issue, and it appears any ambiguity was

cleared up when the magistrate put the words "[d]own stairs only" on the warrant.[1]

The trial judge in this case determined that the basement was a part of the downstairs flat, stating:

> Every flat I've ever been in, each apartment has access to the basement. So in this case the downstairs flat, the basement would be part of the downstairs apartment unit, and I find that the language in the search warrant allowed the police to go in the downstairs unit, so I believe the basement would be included in that, within that phrase allotted in the search warrant.

It appears the trial judge took judicial notice of the configuration of the premises and the conclusions to be drawn. MRE 201 allows judicial notice of adjudicative facts and states:

---

[1] The issue of standing was also not raised by either of the parties in the trial court or on appeal, but there may be some question as to defendant Toodle's standing to raise the question of the search. The automatic standing rule has been abolished in Michigan and has been replaced by the reasonable expectation of privacy test. *People v Smith,* 420 Mich 1, 20-21; 360 NW2d 841 (1984). To determine whether a defendant may attack the propriety of a search or seizure, that search or seizure must have infringed upon an interest of the defendant which article 1, § 11 of the Michigan Constitution was designed to protect and, in making this determination, this Court must decide whether defendant had an expectation of privacy in the place of the search and whether that expectation is one that society is prepared to recognize as reasonable. This requires considering the totality of the circumstances. *Smith, supra,* p 28. See also the recent discussions in *People v Houze,* 425 Mich 82; 387 NW2d 807 (1986).

Though the evidence seemed to show that defendant Toodle did not live at the house, there is no evidence to indicate how long he had been present before he was seen emerging with the other individuals from the home. Though *People v Mason,* 22 Mich App 595; 178 NW2d 181 (1970), lv den 383 Mich 826 (1970), which held that finding a person to be a guest and thus without standing was too broad a statement, was decided before *Smith, supra,* we have inadequate evidence to make a determination as to standing and, since the issue was not raised by either party, we prefer to deal with the issue of whether the basement was a part of the first floor for purposes of the search warrant.

A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. [MRE 201(b).]

MRE 201(b) would seem to require that a fact judicially noticed be beyond reasonable dispute and the fact must be either generally known within the territorial jurisdiction of the trial court or capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned. See *Michaels v Pinten,* 208 Mich 455; 175 NW 465 (1919); *Winekoff v Pospisil,* 384 Mich 260; 181 NW2d 897 (1970). This Court believes that the judge could not properly take such judicial notice in order to make his decision, but it was harmless error.

The history of search and seizure in the United States and in Michigan has been one of very carefully limiting the extent to which a police officer may search a private residence, in view of the historical concern with police entering premises and searching as they pleased, as the colonists experienced it. A distinction must also be made between searches incident to a lawful arrest and searches which are conducted as the result of securing a search warrant. In this case, the question is limited solely to the effect of the search warrant. As said in 79 CJS, Searches and Seizures, § 75, p 876, "[t]he description or designation of the place must be clear, certain, specific, or particular, and if it is not so described or designated, a search

warrant issued thereon is void, and the search is unlawful."[2]

In the case of *People v Lienartowicz*, 225 Mich 303; 196 NW 326 (1923), although the premises owner's name was in the warrant and it also included the basement, no street number was shown. The Supreme Court, quoting *Musk, supra,* indicated that the magistrate could not issue a search warrant to search a place other than that in the affidavit, but that nice or technical descriptions are not required. In *United States v Gonzales*, 697 F2d 155 (CA 6, 1983), the court indicated that, where a structure is divided into more than one unit, probable cause must exist for each unit, relative to the warrant. In that case, the warrant had covered one address, but the officers were able to show probable cause for search of each unit within the building. In our instant case, though there is some indication the parties entered the building with all of the items removed from the vehicle, there is no indication that the officer had adequate reason to believe that they could go into any part of the house and, as noted above, the prosecutor has conceded that items seized on the second floor were not properly seized.

In *People v Musk, supra,* pp 580-581, the Court, quoting 24 RCL 713, said:

> The constitutional requirement is a description which particularly points to a definitely ascertainable place and so as to exclude all others. The writ should not leave the place to be searched to the discretion of the officer; and the modern authorities are unanimous in holding that a search warrant directing an officer to search places generally is clearly illegal.

[2] A distinction must also be made between cases where the premises are not adequately or accurately described, but the owner's or occupant's name is included in the search warrant. See 68 Am Jur 2d, Searches and Seizures, §§ 77, 79, pp 730-732, 733-734.

The search warrant provided for a search of the "entire curtilage" of the lower flat. "Curtilage" is defined as "a space, necessary and convenient and habitually used for the family purposes, and the carrying on of domestic employments. It includes the garden, if there be one, and it need not be separated from other lands by fence." Blacks Law Dictionary (4th ed), p 460. While no case seems to deal with whether a basement is a part of the curtilage for a search warrant, it would seem apparent that a doorless opening leading from two doors of two different units would be a total part of the space necessary and convenient for family purposes for the particular family involved in the first floor dwelling or first floor level.

In *People v Terrell,* 53 Misc 2d 32, 35, 43; 277 NYS2d 926 (1967), aff'd 291 NYS2d 1002 (1968), the trial judge found that a fire escape outside of a person's residence is in law a part of the "curtilage" of an apartment, and as such was entitled to the protection of the federal constitutional protections against unreasonable searches and seizures.

The only case we have discovered that discusses the basement as a part of the house was a Kentucky decision where burglarly was charged and a defendant argued that the cellar which could not be entered from the first floor but only from outside the house was not a part of a dwelling for purposes of the burglary statute. The court in *Mitchell v Commonwealth,* 88 Ky 349, 352; 11 SW 209 (1889), finding that as used the cellar was appurtenant to and a parcel of the dwelling house, said:

> There is a diversity of decision as to what does, and what does not, in law, constitute a part of a dwelling house. Some cases include all within the curtilage; and this, according to Blackstone, ap-

pears to have been the common law rule; while others are made to turn upon the use. . . .

\* \* \*

It is difficult to lay down any general rule upon the subject, owing to the nice distinctions to be found in some of the cases. It seems to us, however, that both the use and the situation should be considered.

As said in *People v Ranes*, 230 Mich 384; 203 NW 77 (1925), "[t]echnicalities of description as in a conveyance are not required." We believe that in this case, where it was apparent that the first floor dwelling had full access to the basement and that there was no division of the basement showing that part was for one floor and part was for the other, the items seized in the basement should not be suppressed. We find the trial judge correctly denied suppression of those items, though for different reasons than relied upon by the trial judge.

II

Defendant's second issue on appeal is that there was insufficient evidence presented to justify a verdict of guilty of receiving and concealing stolen property over the value of $100. Defendant argues that, since he was carrying only one tire, there was insufficient evidence presented to indicate that he was guilty of receiving and concealing stolen property of a value over $100, and also that there was insufficient evidence presented to indicate that he knew the Corvette had been stolen.

The elements of the crime of receiving and concealing stolen property over the value of $100 are set forth in the proposed Michigan Criminal Jury Instructions (CJI) 26:1:01, which provides: (1) some property must be shown to have been stolen; (2) the defendant must have received, concealed, or

aided in the concealment of that property; (3) the property must be identified as being the same property which had been previously stolen; (4) the defendant must have known that the property was stolen at some time, either when he received, concealed, or aided in the concealment of the property or at some time when he wrongfully continued to possess the property; and (5) the property at the time it was knowingly received or concealed must have had a fair market value which exceeded, that is, was over $100.

The people must prove every element of the crime charged by direct or circumstantial evidence beyond a reasonable doubt. *People v Gadson,* 348 Mich 307; 83 NW2d 227 (1957). The credibility and weight to be given the testimony of a witness is within the province of the jury. *People v Morris,* 12 Mich App 411; 163 NW2d 16 (1968).

The standard is the same for reviewing both a sufficiency of the evidence claim and a denial of a motion for directed verdict. The trial judge, when ruling on a motion for a directed verdict of acquittal, must consider the evidence presented by the prosecution up to the time the motion is made, view the evidence in a light most favorable to the prosecution, and determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. *People v Hampton,* 407 Mich 354, 368; 285 NW2d 284 (1979), cert den 449 US 885; 101 S Ct 239; 66 L Ed 2d 110 (1980); *People v Cook,* 131 Mich App 796, 809; 347 NW2d 720 (1984).

Defendant claims that there was insufficient evidence on the issue of the value of stolen parts which defendant was convicted of receiving and concealing. Because the crime is a felony if the property value is over $100, and is a misdemeanor

if the property is of a value worth less than $100, the issue of value is critical in the charge of receiving and concealing stolen property. Where the prosecutor fails to prove that the value of the goods is over the statutory minimum to make a felony, defendant must be convicted of only a misdemeanor. *People v Hanenberg,* 274 Mich 698; 265 NW 506 (1936).

In *People v Vicuna,* 141 Mich App 486, 495-496; 367 NW2d 887 (1985), this Court summarized the law applicable to aiding and abetting:

> One who procures, counsels, aids or abets in the commission of an offense may be tried and convicted as if he directly committed the offense. MCL 767.39; MSA 28.979. The phrase "aiding and abetting" describes all forms of assistance rendered to the perpetrator of the crime and comprehends all words or deeds which may support, encourage or incite the commission of a crime. *People v Palmer,* 392 Mich 370; 220 NW2d 393 (1974); *People v Cortez,* 131 Mich App 316; 346 NW2d 540 (1984); *People v Turner,* 125 Mich App 8; 336 NW2d 217 (1983). Mere presence, even with knowledge that an offense is about to be committed, is not enough to make one an aider or abettor. *People v Burrel,* 253 Mich 321; 235 NW2d 170 (1931); *Turner, supra.* To be convicted, the defendant must either himself possess the required intent or participate while knowing that the principal possessed the required intent. *Turner, supra; People v Karst,* 118 Mich App 34; 324 NW2d 526 (1982); *People v Triplett,* 105 Mich App 182; 306 NW2d 442 (1981), *remanded on other grounds* 414 Mich 898; 323 NW2d 7 (1982).

In this case, the fact that the defendant was seen carrying only one tire back to the house after he and his four friends had gone to the vehicle that had been moved from the driveway into the alley does not preclude him from being guilty as

an aider or abettor for receiving and concealing all the stolen parts.

The value of stolen goods is their market value at the time of the receiving or possession by defendant. *People v Fishel,* 270 Mich 82; 258 NW 217 (1935); *People v Dandy,* 99 Mich App 166, 173; 297 NW2d 604 (1980), rev'd on other grounds 410 Mich 901 (1981). This value is to be determined by the jury by consideration of all the testimony that has been presented in the case, and applying its judgment to that testimony to determine the value. *Fishel, supra,* p 85.

It was stipulated at the trial that the owner of the stolen Corvette had just bought it for $21,000. In addition, all the parts of the automobile which were seen carried back to the house—the seats, wheels, tires, roof, and glass top—clearly exceeded $100. Even if the individual tire which defendant was seen carrying into the house was not worth over $100, defendant is guilty, under the aiding and abetting theory, of receiving and concealing all the parts, not just one tire. The officer also testified that he had seen the defendant loosen all four tires.

Under the *Hampton* standard, a rational trier of fact clearly could find that the defendant was guilty of receiving and concealing stolen goods over the value of $100 on the basis of his participation in the overall theft. The trial court correctly denied defendant's motion for a directed verdict.

Defendant's other argument, which does not require much consideration, is that there was insufficient evidence to submit the question of knowledge to the jury. In many criminal cases, it is impossible to submit direct proof of the corpus delicti. It and the defendant's guilt can rest together on one foundation of circumstantial evidence. *People v Hawksley,* 82 Mich 71; 45 NW

1123 (1890). While it is true that knowledge of the fact that the parts are stolen is an essential element of the crime of receiving and concealing stolen property, *People v Montague,* 71 Mich 318; 39 NW 60 (1888), a rational trier of fact under the *Hampton* standard could clearly find that, when defendant went to the alley with the other individuals and they all descended on the car "like a pit crew," as stated by the officer who observed the event, defendant had the requisite guilty knowledge.

Affirmed.