*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

UNPUBLISHED
April 18, 2019

v

JOHN PATRICK CAFARELLI,

        Defendant-Appellant.

No. 340802
Macomb Circuit Court
LC No. 2015-001079-FH

Before: MARKEY, P.J., and FORT HOOD and GADOLA, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of 10 counts of possession of child sexually abusive material ("possession of CSAM"), MCL 750.145c(4), one count of distribution or promotion of child sexually abusive material ("distribution or promotion of CSAM"), MCL 750.145c(3), and one count of using a computer to commit a crime, MCL 752.796. Defendant was sentenced to concurrent sentences of 23 to 48 months' imprisonment for each of the possession of CSAM convictions, 23 to 84 months' imprisonment for the distribution or promotion of CSAM conviction, and 23 to 84 months' imprisonment for the using a computer to commit a crime conviction. We affirm.

## I. BASIC FACTS

Special Agent Steven Standfest, with the Internet Crimes Against Children Task Force, which is part of the Michigan Attorney General's Office Criminal Division, was notified through law enforcement software that a video displaying CSAM was downloaded from the Internet Protocol (IP) address 69.14.77.21. The video was titled "Baby J," and displayed a small child being penetrated by an adult penis. After reviewing the video footage and determining that the substance of the "Baby J" video contained CSAM, Agent Standfest discovered that the IP address was registered to a modem located at defendant's home at 8707 London Drive, Sterling Heights, Michigan 48312 (London address).

Agent Standfest executed a search warrant authorizing the search of the London address for evidence related to the possession or distribution of CSAM. While executing the search

warrant, Michigan State Police Sergeant David Boike (a forensic computer examiner) called Agent Standfest into a bedroom near the kitchen area. Agent Standfest entered the room, and observed a computer monitor displaying an image of a 10-year-old girl performing oral sex on a fake penis. Agent Standfest observed a prescription pill bottle and mail on a desk next to the computer monitor, with defendant's name appearing on the pill bottle and the mail. Defendant was arrested, and Agent Standfest seized a Dell computer ("computer") and a separate external hard drive ("hard drive"), both of which were recovered from the room with the computer monitor displaying the CSAM.

Sergeant Boike reviewed the computer and the hard drive recovered from the search of defendant's home. While the computer and the hard drive did not contain a file titled "Baby J," Sergeant Boike did find a "compilation video" on both the computer and the hard drive that included the same content as the "Baby J" video that Agent Standfest received. Sergeant Boike also discovered 10 photographs containing CSAM that were saved on the hard drive, four of which were also saved on the computer. Defendant was charged with and convicted of 10 counts of possession of CSAM, one count of distribution or promotion of CSAM, and one count of using a computer to commit a crime.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant argues that there was insufficient evidence to support his convictions because there was no evidence showing that defendant knew the CSAM was on the computer and the hard drive, nor was there any evidence that defendant was the person who downloaded and distributed the CSAM. We disagree.

This Court reviews a challenge to the sufficiency of the evidence in a jury trial de novo. *People v Gaines*, 306 Mich App 289, 296; 856 NW2d 222 (2014). The evidence is viewed "in the light most favorable to the prosecution, to determine whether the trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *Id*. When reviewing a challenge to the sufficiency of the evidence, "[a]ll conflicts in the evidence must be resolved in favor of the prosecution, and circumstantial evidence and all reasonable inferences drawn therefrom can constitute satisfactory proof of the crime." *People v Solloway*, 316 Mich App 174, 180-181; 891 NW2d 255 (2016) (citation omitted). It is the role of the jury as trier of fact "to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *People v Blevins*, 314 Mich App 339, 357; 886 NW2d 456 (2016) (citation and quotation marks omitted).

MCL 750.145c(4) (possession of CSAM), provides, in relevant part:

> A person who knowingly possesses or knowingly seeks and accesses any child sexually abusive material is guilty of a felony . . . if that person knows, has reason to know, or should reasonably be expected to know the child is a child or that the child sexually abusive material includes a child or that the depiction

constituting the child sexually abusive material appears to include a child, or that person has not taken reasonable precautions to determine the age of the child.[1]

The term "child sexually abusive material" is defined in MCL 750.145c(1)(o) as follows:

> "Child sexually abusive material" means any depiction, whether made or produced by electronic, mechanical, or other means, including a developed or undeveloped photograph, picture, film, slide, video, electronic visual image, computer diskette, computer or computer-generated image, or picture, or sound recording which is of a child or appears to include a child engaging in a listed sexual act; a book, magazine, computer, computer storage device, or other visual or print or printable medium containing such a photograph, picture, film, slide, video, electronic visual image, computer, or computer-generated image, or picture, or sound recording; or any reproduction, copy, or print of such a photograph, picture, film, slide, video, electronic visual image, book, magazine, computer, or computer-generated image, or picture, other visual or print or printable medium, or sound recording.

To constitute "possession" under MCL 750.145c(4), a person must "knowingly ha[ve] actual physical control or knowingly ha[ve] the power and the intention at a given time to exercise dominion or control" over the CSAM. *People v Flick*, 487 Mich 1, 13; 790 NW2d 295 (2010). Possession may be actual or constructive. *Id*. at 14. Also, "[p]ossession can be established with circumstantial or direct evidence, and the ultimate question of possession is a factual inquiry to be answered by the jury." *Id*. (Citation and quotation marks omitted.)

"By contrast, if a person accidentally views a depiction of child sexually abusive material on a computer screen, that person does not 'knowingly possess' any CSAM in violation of MCL 750.145c(4)." *Flick*, 487 Mich at 19. "[I]t is the many intentional affirmative steps taken by the defendant to gain actual physical control, or to knowingly have the power and the intention at a given time to exercise dominion or control over the contraband either directly or through another person or persons, that distinguishes mere viewing from knowing possession." *Id*. at 18. "This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *People v Passage*, 277 Mich App 175, 177; 743 NW2d 746 (2007). Also, the prosecution must establish the defendant's identity as part of every offense. *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008).

MCL 750.145c(3) (distribution or promotion of CSAM) provides, in relevant part:

> A person who distributes or promotes, or finances the distribution or promotion of, or receives for the purpose of distributing or promoting, or conspires, attempts, or prepares to distribute, receive, finance, or promote any

---

[1] The pertinent provisions of MCL 750.145c in effect during the lower court proceedings are cited in this opinion. While the statute was amended effective March 17, 2019, 2018 PA 373, the amendments are not relevant to our analysis in this case.

child sexually abusive material or child sexually abusive activity is guilty of a felony . . . if that person knows, has reason to know, or should reasonably be expected to know that the child is a child or that the child sexually abusive material includes a child or that the depiction constituting the child sexually abusive material appears to include a child, or that person has not taken reasonable precautions to determine the age of the child.

Further, MCL 752.796(1) provides, "[a] person shall not use a computer program, computer, computer system, or computer network to commit, attempt to commit, conspire to commit, or solicit another person to commit a crime."

As an initial matter, defendant in his brief on appeal concedes that the material found on the computer and the hard drive constitutes CSAM. Defendant attempts to argue that the computer and the hard drive that stored the CSAM did not belong to him. However, defendant acknowledges, in his brief on appeal, that the computer and the hard drive belong to him, as he states, "[w]hile there is no doubt that child sexually abusive material was found on *the Defendant's computers and electronic storage devices*, there was no evidence showing that he knew the material was on *his computers/electronic storage devices* or that he was the person responsible for downloading it."

Notwithstanding this concession, the evidence at trial demonstrates that the room where the computer and the hard drive were found was in fact defendant's bedroom. The trial testimony of Daniel Priest (defendant's roommate), Lawrence Brown (defendant's roommate), and Nicholas Cafarelli (defendant's brother) establishes that defendant slept in that room and used that room to store his personal belongings. Defendant attempts to distinguish his use of the room as a general storage room for all the roommates rather than his own bedroom, arguing that the computer and the hard drive could have belonged to one of his other roommates. However, none of the other roommates stored items in that room, and they did not have access to that room, as the room remained locked when defendant was not home. Moreover, when Agent Standfest executed the search warrant, he observed defendant's prescription pill bottle and mail with defendant's name on it in the room where the computer and hard drive were found. Thus, "viewing the evidence in the light most favorable to the prosecution," a reasonable juror could conclude that the computer and the hard drive that stored the CSAM, as well as the bedroom where these devices were found, belonged to defendant. *Flick*, 487 Mich at 13-14; *Gaines*, 306 Mich App at 296.

With respect to the distribution or promotion of CSAM conviction, Agent Standfest received a notification on May 30, 2014, that a video titled "Baby J" (CSAM) was downloaded from defendant's IP address. After searching the computer and the hard drive recovered from defendant's bedroom, Sergeant Boike located—on both the computer and the hard drive—a "compilation video" that included the "Baby J" video. Both the compilation video and the "Baby J" video featured the same child "actor." Indeed, the only difference between the two videos was that the compilation video was longer than the "Baby J" video. Also, the "Baby J" video that Agent Standfest received was downloaded using a "Bit Torrent Network," which, according to Agent Standfest, allows "a group of computer users to share and exchange files online." Notably, the computer recovered from defendant's room had a Bit Torrent program on it, and that program was running CSAM the day Agent Standfest executed the search warrant.

Therefore, a reasonable jury could conclude that defendant was the person who distributed the "Baby J" video, and that he used a computer to do so. *Id.*

Defendant argues that there was insufficient evidence to establish that he knew the CSAM was on these devices. Knowledge is an element of both possession of CSAM and distribution or promotion of CSAM. See MCL 750.145c(3) and (4). However, not only were the computer and the hard drive that stored the CSAM found in defendant's bedroom, but CSAM was being displayed on a computer monitor in defendant's bedroom while Agent Standfest was executing the search warrant. The only other roommates home at the time Agent Standfest executed the search warrant were Priest and Brown, who were both in their respective rooms when the search warrant was first executed. Moreover, the CSAM was specifically saved on the computer and the hard drive. Sergeant Boike testified that, because no file automatically saves to a computer or hard drive by default, a person has to actively save files to their computer or hard drive. Because of the affirmative steps required to save files to a computer and a hard drive, a reasonable juror could conclude that defendant did not possess the CSAM by accident. *Flick*, 487 Mich at 18; *Gaines*, 306 Mich App at 296. Instead, the circumstances suggest that defendant not only had knowledge that the CSAM was on the computer and the hard drive, but that he was the person who took action to store the CSAM on those devices. *Flick*, 487 Mich at 13-14, 18; *Solloway*, 316 Mich App at 180-181; *Gaines*, 306 Mich App at 296.

Defendant points out that he lived with multiple other roommates—including John Machuta, defendant's roommate who died after defendant was charged in this case—that also had access to the Wi-Fi in defendant's home. Again, however, the computer and the hard drive that stored the CSAM were found in defendant's bedroom, and the record does not reflect that anyone other than defendant used the room. While Machuta possibly had a key to defendant's room, the record did not demonstrate that Machuta ever entered the room, or used the computer or hard drive found in defendant's room. Therefore, a reasonable juror could conclude that defendant knowingly possessed the 10 images of CSAM, distributed or promoted CSAM, and that he used a computer in doing so. *Flick*, 487 Mich at 13-14, 18; *Gaines*, 306 Mich App at 296.

## III. GREAT WEIGHT OF THE EVIDENCE

To the extent defendant argues that the jury's verdict was against the great weight of the evidence presented at trial, we conclude that defendant has abandoned that argument on appeal. However, even addressing the merits of defendant's claim, the jury's verdict was not against the great weight of the evidence.

## A. PRESERVATION OF THE ISSUE AND STANDARD OF REVIEW

A defendant is required to move for a new trial in the lower court to preserve a claim that the verdict is against the great weight of the evidence. *People v Cameron*, 291 Mich App 599, 617; 806 NW2d 371 (2011). Defendant did not move for a new trial in the trial court; therefore, defendant's claim, that the jury's verdict was against the great weight of the evidence, is unpreserved.

Generally, "[t]he test to determine whether a verdict is against the great weight of the evidence is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *People v Lacalamita*, 286 Mich App 467, 469; 780 NW2d 311 (2009). "[A] verdict may be vacated only when the evidence does not reasonably support it and it was more likely the result of causes outside the record, such as passion, prejudice, sympathy, or some other extraneous influence." *Id*.

However, "[u]npreserved challenges to the great weight of the evidence are reviewed for plain error affecting the defendant's substantial rights." *People v Lopez*, 305 Mich App 686, 695; 854 NW2d 205 (2014). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. The defendant has the burden of persuasion as it pertains to prejudice. *Id*. Once a defendant demonstrates the three requirements, "an appellate court must exercise its discretion in deciding whether to reverse." *Id*. "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (citation and quotation marks omitted).

## B. ABANDONMENT OF GREAT WEIGHT OF THE EVIDENCE CLAIM

"An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment [of an issue] with little or no citation of supporting authority." *People v Matuszak*, 263 Mich App 42, 59; 687 NW2d 342 (2004) (citation and quotation marks omitted). When a defendant affords an issue only cursory analysis in his brief on appeal, this will amount to abandonment of the issue. *Id*. In his brief on appeal, defendant does not identify this issue in his statement of the questions involved, nor does defendant provide any analysis as to how the evidence preponderates against the jury's verdict. Instead, defendant simply contends that "the credible trial evidence weighs against the jury's verdict," concludes his argument for the sufficiency of the evidence issue by stating, in relevant part, that "[i]t would be a miscarriage of justice to allow the verdict to stand," and cites *People v Lemmon*, 456 Mich 625; 576 NW2d 129 (1998), for support of his contention without any explanation. Defendant fails to provide any analysis as to how the jury's verdict was against the great weight of the evidence, and merely relies on authority relevant to whether there was sufficient evidence to support defendant's conviction. Therefore, defendant has abandoned this issue on appeal. *Matuszak*, 263 Mich App at 59.

## C. MERITS OF DEFENDANT'S GREAT WEIGHT OF THE EVIDENCE CLAIM

Even addressing the merits of defendant's argument, the jury's verdict was not against the great weight of the evidence. The evidence established that defendant's computer and hard drive—both of which were found in his bedroom—contained 10 images of CSAM and contained a larger version of the same "Baby J" video that Agent Standfest received that initiated his investigation. No other roommate entered defendant's bedroom or used the computer or the hard drive in his bedroom. Moreover, a video of CSAM was playing on a computer monitor in

defendant's room while Agent Standfest executed the search warrant. Therefore, it cannot be said that "the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *Lacalamita*, 286 Mich App at 469.

## IV. MOTION TO SUPPRESS

Defendant argues that the trial court erred in denying his motion to suppress the evidence obtained in the search of his home because the search warrant and the affidavit supporting the search warrant contained numerous errors that rendered the search warrant invalid for lack of probable cause. Further, defendant argues that Agent Standfest's failure to include the fact that defendant had roommates living in his home rendered the search warrant invalid. We disagree.

Generally, "[q]uestions of law relevant to a motion to suppress evidence are reviewed de novo." *People v Booker*, 314 Mich App 416, 419; 886 NW2d 759 (2016) (citation and quotation marks omitted). This Court will review for clear error findings of fact underlying the trial court's decision. *People v Antwine*, 293 Mich App 192, 194; 809 NW2d 439 (2011). "A finding of fact is clearly erroneous if, after a review of the entire record, an appellate court is left with a definite and firm conviction that a mistake has been made." *Id*. (Citation and quotation marks omitted.)

## A. ERRORS IN THE SEARCH WARRANT AND THE AFFIDAVIT

A search warrant may be issued only upon a showing of probable cause. US Const, Am IV; Const 1963, art 1, § 11; MCL 780.651(1). "A reviewing court must give great deference to a magistrate's finding of probable cause to issue a search warrant. Accordingly, [this Court] do[es] not review de novo the lower court's determination regarding the sufficiency of a search warrant affidavit." *People v Mullen*, 282 Mich App 14, 21; 762 NW2d 170 (2008). Rather, this Court will only inquire "whether a reasonably cautious person could have concluded that there was a substantial basis for the finding of probable cause." *Id*. at 21-22 (citation and quotation marks omitted). To discern a "substantial basis" for probable cause, this Court "must ensure that there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id*. at 22 (citation and quotation marks omitted).

Further, "[p]robable cause must be based on facts presented to the issuing magistrate by oath or affirmation, such as by affidavit." *People v Brown*, 297 Mich App 670, 675; 825 NW2d 91 (2012). "When reviewing a search warrant affidavit, [this Court] must read it in a common sense and realistic manner, not a crabbed or hypertechnical manner." *Mullen*, 282 Mich App at 27 (citation and quotation marks omitted). "[O]nly when there have been *material* omissions *necessary to the finding of probable cause* may the resulting search warrant be invalidated." *Id*. at 24. As defendant notes in his brief on appeal, "[t]he defendant has the burden of showing, by a preponderance of the evidence, that the affiant knowingly and intentionally, or with a reckless disregard for the truth, inserted false material into the affidavit and that the false material was necessary to the finding of probable cause." *People v Waclawski*, 286 Mich App 634, 701; 780 NW2d 321 (2009).

The affidavit in support of the search warrant contains four errors: the first error incorrectly states the relevant IP address as "6869.14.77.21"; the second error incorrectly states

defendant's address as "8708 London Drive"; the third error incorrectly states the relevant IP address as "68.41.230.234"; and the fourth error incorrectly states defendant's address as being on Jefferson Avenue in Saint Clair Shores, Michigan. The search warrant also contains two errors: the first error authorizes officers to secure items related to the incorrect IP address of "68.41.230.234," and the second error authorizes officers to search property at the London address, but incorrectly indicates that the subject of the search is an unknown person rather than defendant.

At the evidentiary hearing, Agent Standfest admitted that he made mistakes in the search warrant and the affidavit; however, he testified that the district court found those errors and had Agent Standfest correct them. The district court asked Agent Standfest to put a line through the inaccurate information, write in the correct information, and initial the correction. Specifically, the district court directed Agent Standfest to put a line through the portion of the affidavit that incorrectly stated defendant's address as being on Jefferson Avenue in Saint Clair Shores, Michigan, write defendant's London address instead, and initial the change. Agent Standfest also corrected the search warrant at the district court's direction, as Agent Standfest replaced the unknown name with defendant's name and initialed the correction in front of the district court. Agent Standfest testified that he "did not alter anything on [the search warrant] without the judge's authorization . . . ." Finally, Agent Standfest testified that, while the search warrant and the affidavit incorrectly and inconsistent refer to different IP addresses, the top-right corner of every page of the search warrant and the affidavit state the correct IP address.

The trial court did not err in denying defendant's motion to suppress the evidence recovered in the search of defendant's home. Agent Standfest supported the search warrant with the affidavit that outlined his investigation. The affidavit states that Agent Standfest received information that CSAM was downloaded from someone with access to the IP address 69.14.77.21, which belonged to defendant's modem at defendant's London address. While the search warrant and the affidavit contained some inconsistencies in the IP address, the location to be searched, and the subject to be searched, the district court was aware of these inconsistencies and directed Agent Standfest to correct them. In reading the affidavit in a common sense, realistic way—and in light of Agent Standfest's corrections to the search warrant and the affidavit—the district court knew that Agent Standfest was seeking a search warrant to search defendant's address at 8707 London Drive, Sterling Heights, Michigan 48312, and seize items in connection with CSAM that was distributed using the IP address 69.14.77.21. *Mullen*, 282 Mich App at 27. Based on the information in Agent Standfest's affidavit, there was a fair probability that CSAM would be found at defendant's London address; therefore, the affidavit supported a finding of probable cause sufficient for the district court to authorize the search warrant. *Id*. at 14, 22.

Defendant argues that Agent Standfest knowingly and intentionally included these errors in the search warrant and the affidavit in support of the search warrant. However, defendant cannot establish that Agent Standfest "knowingly and intentionally, or with a reckless disregard for the truth, inserted false material into the affidavit and that the false material was necessary to the finding of probable cause." *Waclawski*, 286 Mich App at 701. All the correct information

(the IP address, defendant's London address, and defendant's name) appeared in the search warrant and the affidavit before the district court authorized the search warrant.[2] Therefore, it cannot be said that Agent Standfest inserted false material into the search warrant and the affidavit when he also included the correct information in those same documents. *Id*. Rather, the evidence shows that the errors in the search warrant and the affidavit were merely typographical errors and drafting mistakes that do not rise to the level of false information that was deliberately or recklessly included to support a finding of probable cause. *Id*.

Further, there is no indication that the district court was misled by the errors in the search warrant and the affidavit such that suppression of the evidence obtained from the search would be an appropriate remedy. "Suppression . . . remains an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth." *People v Hellstrom*, 264 Mich App 187, 197; 690 NW2d 293 (2004). At the evidentiary hearing for defendant's motion to suppress, Agent Standfest testified that he conducted the search of defendant's home pursuant to his normal procedures, and that he had a good-faith belief that defendant was the correct subject of the search. This belief was objectively reasonable, as Agent Standfest was the person who initially investigated the matter and discovered that CSAM had been downloaded from defendant's IP address at defendant's London address. Therefore, notwithstanding the errors in the search warrant and the affidavit, the suppression of the evidence recovered from the search of defendant's home would not be an appropriate remedy under the good-faith exception to the exclusionary rule. *People v Goldston*, 470 Mich 523, 526; 682 NW2d 479 (2004). Thus, the trial court did not err in denying defendant's motion to suppress.

## B. PARTICULARITY REQUIREMENT

"A search warrant must describe with particularity the place to be searched and the persons or things to be seized." *People v Martin*, 271 Mich App 280, 303; 721 NW2d 815 (2006), aff'd 482 Mich 851 (2008), citing US Const, Am IV; Const 1963, art 1, § 11; MCL 780.654. "[I]t is enough if the description is such that the officer with a search warrant can with reasonable effort ascertain and identify the place intended." *Martin*, 271 Mich App at 304 (citation and quotation marks omitted). "The purpose of the particularity requirement in the description of items to be seized is to provide reasonable guidance to the executing officers and to prevent their exercise of undirected discretion in determining what is subject to seizure." *Id*. at 304 (citation and quotation marks omitted). "The degree of specificity required depends on the circumstances and types of items involved." *Id*. at 304 (citation and quotation marks

---

[2] While there was some conflict in Agent Standfest's testimony at the evidentiary hearing regarding when the corrections to the affidavit and search warrant were made, Agent Standfest was unequivocal in his testimony that he would not have corrected the affidavit or search warrant without the district court's awareness and express authorization and the trial court found his testimony credible. "An appellate court will defer to the trial court's resolution of factual issues, especially where it involves the credibility of witnesses." *People v Cartwright*, 454 Mich 550, 555; 563 NW2d 208 (1997).

omitted). Further, "[t]he general rule, where a multi-unit dwelling is involved, is that the warrant must specify the particular sub-unit to be searched, unless the multi-unit character of the dwelling is not apparent and the police officers did not know and did not have reason to know of its multi-unit character." *People v Toodle*, 155 Mich App 539, 545; 400 NW2d 670 (1986), citing *People v Franks*, 54 Mich App 729, 733; 221 NW2d 441 (1974).

Defendant argues that the trial court erred in denying his motion to suppress the evidence recovered in the search of his home because the search warrant did not describe the London address as a multi-unit residence with multiple occupants residing in the home. At the evidentiary hearing, Agent Standfest testified that, before he executed the search warrant, he knew that defendant lived in a "single-family residence," and that there was an undetermined number of people coming and going from the home. Agent Standfest knew, before applying for the search warrant, that at least two other people lived at the London address with defendant, but Agent Standfest did not include that information in the search warrant or the affidavit. The trial court held that the search warrant was valid because the place to be searched was a single-family residence, and the fact that multiple individuals lived at the address did not change the character of the residence.

The trial court's holding is consistent with the general rule described above, as defendant's address was indeed a single-family residence that did not have separate units within it. *Toodle*, 155 Mich App at 545. While Agent Standfest knew that defendant had roommates, he also knew that CSAM had been downloaded from an IP address associated with the London address, meaning that anybody in the single-family residence could have downloaded the CSAM. In fact, the search warrant authorized Agent Standfest to look for "any type of computer or digital device that [is] capable of downloading and sharing images of [CSAM]" without regard to the owner of the device. Therefore, Agent Standfest's failure to include information that multiple people lived at the London address, in either the search warrant or the affidavit in support of the search warrant, did not invalidate the search warrant. See *id*. Nor did this omission constitute a materially false omission rendering the search warrant or the affidavit invalid. *Waclawski*, 286 Mich App at 701.

Affirmed.

/s/ Jane E. Markey
/s/ Karen M. Fort Hood
/s/ Michael F. Gadola